STATE OF NORTH CAROLINA v. WINDLEY MOORE

No. 842SC956

(Filed 2 July 1985)

1. **Homicide § 23— instructions on first and second degree murder and voluntary manslaughter—evidence sufficient**

   There was evidence to support the trial court's instruction on first and second degree murder and on voluntary manslaughter where two witnesses heard loud voices preceding the shot which killed decedent, neither saw decedent assault or make threatening moves toward defendant, no weapon was found on or near decedent, and defendant told the investigating officer that decedent was trying to steal his property and that defendant intended to kill him. G.S. 15A-1232.

2. **Homicide § 30.3— refusal to instruct on involuntary manslaughter—proper**

   The trial court properly denied defendant's request for instructions on involuntary manslaughter where all the evidence presented by the defendant suggests that he intentionally assaulted the decedent with a deadly weapon knowing the assault was likely to kill or inflict serious injury. An attempt by defendant to protect himself from decedent would support a charge of voluntary rather than involuntary manslaughter.

3. **Criminal Law § 162— no objection to questions—assignment of error dismissed**

   In a prosecution for murder, an assignment of error concerning the circumstances surrounding defendant's statement to police· was dismissed because defendant failed to make a timely objection to the questions. G.S. 15A-1446.

4. **Criminal Law § 165— improper argument by prosecutor—defendant's refusal to cooperate in reconstructing record—no error**

   The Court of Appeals could not review the denial of defendant's motion for appropriate relief from a voluntary manslaughter conviction, based on improper comments in the State's closing argument and on the court's failure to record the State's closing argument despite defendant's request, where defendant declined the court's offer to reconstruct the argument using the court's notes and the remembrances of the opposing attorneys. G.S. 15A-1230, Rule 9(a), North Carolina Rules of App. Procedure.

APPEAL by defendant from *Phillips (Herbert O.), Judge.* Judgment entered 11 April 1984, in Superior Court, BEAUFORT County. Heard in the Court of Appeals 2 April 1985.

*Attorney General Rufus L. Edmisten by Associate Attorney Sueanna P. Peeler for the State.*

*Wilkinson & Vosburgh by James R. Vosburgh for defendant appellant.*

COZORT, Judge.

Defendant was charged with murder in the shooting death of Charles Richards. The jury found defendant guilty of voluntary manslaughter, and on a finding of mitigating factors he was sentenced to four years' imprisonment, a term less than the presumptive term. Defendant appeals from the judgment and the denial of his motion for appropriate relief, alleging error in the charge to the jury and the trial court's failure to record the State's argument to the jury. We find no error.

The State's evidence showed the following:

Eric Sheldon and Christopher Jones were fixing a broken rim on Sheldon's car at the corner of Respass and Fourth Streets in Washington at 1:30 on the morning of 3 December 1983. Sheldon was changing the tire while Jones was looking for the hub which had come off the axle. Sheldon heard two men arguing across the street. He heard a gunshot, looked up and saw one of the men fall. The defendant was standing ten feet away from the man who fell. He put the gun away and started walking over toward Sheldon and Jones, who had returned to the car. The defendant told Sheldon and Jones that he had just shot a man who had been stealing from him, and he was tired of it. Jones testified that when he was looking for the hub, he heard two men arguing. He looked over and saw the defendant pull a pistol up and shoot the other man somewhere in the chest. He stated that he saw no weapons in the hands of the deceased; furthermore, he did not see the deceased advance upon or raise his arms toward the defendant.

Washington City Police Patrolman George Stokes testified that he was dispatched to the scene of the shooting. Patrolman Stokes asked Jones and Sheldon who shot the man. The defend-

State v. Moore

ant approached Patrolman Stokes and said he had shot him. When Patrolman Stokes searched the area of the body, he found no weapons either in the deceased's hands or in the vicinity. Washington City Police Captain Leon Schaffer testified that he booked the defendant at the Police Department following his arrest. He advised the defendant of his right to remain silent, and the defendant elected not to make a statement. However, during the booking process, defendant stated in a loud voice, not directed to any specific person, that he shot the deceased, that he was sorry he did it, but that he intended to do it, that they were not going to steal from him any more, that he had a right to protect his property, and that he did not have to worry about this kind of thing any more.

The deceased died before he reached the hospital.

Defendant testified at trial about the events which climaxed in the shooting death of Charles Richards. At about 7:00 p.m. on the evening of 2 December 1983, defendant left his woodyard where he had been working all day. He drove his pickup truck to a rooming house he owned some blocks away where he intended to collect the rent due from his tenants. Defendant spent several hours at the rooming house waiting for tenants to return from work. During the evening Mr. Charles Richards, the deceased, poked his head in the doorway to the room where defendant was waiting. Although Richards was not a tenant in the house, defendant knew him as a longtime resident of the neighborhood. Sometime later defendant left to go home. As he walked toward his truck he heard a voice behind him say, "Bitch, I'm going to rob you." Defendant looked around and saw Richards. Richards grabbed at defendant who ducked and ran away with Richards following. After some detours defendant arrived at his woodyard where he had another truck. Before defendant could reach his truck Richards again confronted him saying, "Bitch, I'm going to still get you." Richards threw something, possibly a brick, at defendant. Defendant ducked, pulled his gun from its holster, pointed the gun at Richards, and shot him.

[1]   On appeal defendant cites as error that the court instructed the jury on first- and second-degree murder and voluntary manslaughter. Defendant argues that he was being feloniously assaulted at the time of the shooting and the evidence does not support the court's instructions.

In a criminal trial the judge has the duty to instruct the jury on the law arising from all the evidence presented. G.S. 15A-1232. To determine if an instruction should be given, the court must consider whether there is any evidence in the record which might convince a rational trier of fact to convict defendant of the offense. *State v. Wright*, 304 N.C. 349, 283 S.E. 2d 502 (1981). In the present case Sheldon and Jones, who viewed the shooting, testified that preceding the shot they heard loud voices. Neither of the young men saw the decedent assault or make threatening moves toward the defendant. No weapon was found on or near the decedent.

Officer Stokes, who arrived on the scene minutes after the shooting testified as follows:

Mr. Windley Moore said, "I intended to kill his A S S." I asked, "why did you shoot," and he said that he was trying to steal my property. I asked him, "what kind of property," and he stated, "he was trying to steal my property." I asked Mr. Moore did the deceased try to assault him in any kind of way and he said "no . . . a man's got a right to protect his property."

Officer Stokes further testified that when he asked defendant how many shots were fired, the defendant responded, "It only took one shot . . . I didn't intend to miss."

The evidence produced by the State was sufficient to convince a rational trier of fact that defendant formed an intent to kill with deliberation and premeditation as required for a conviction of first-degree murder, *see State v. Misenheimer*, 304 N.C. 108, 282 S.E. 2d 791 (1981) or, alternatively, that defendant had the requisite malice for a conviction of second-degree murder. *See State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). Testimony by the defendant was sufficient to convince a rational trier of fact that defendant shot Richards in the heat of passion or in the exercise of an imperfect right of self-defense where excessive force was used, as required for a conviction of voluntary manslaughter. *Id.* Because the record discloses sufficient evidence to support a verdict of first- or second-degree murder or voluntary manslaughter, we find the trial court correctly instructed the jury on these crimes.

[2] Next defendant argues that it was error for the court not to instruct the jury on involuntary manslaughter. He contends that this case revolves around one question—whether defendant used excessive force to protect himself or his property. Defendant has misapprehended the law. An imperfect act of self-defense or defense of property, such as defendant argues may have occurred, is an intentional act without malice within the purview of voluntary manslaughter. See State v. Rinck, 303 N.C. 551, 280 S.E. 2d 912 (1981). Involuntary manslaughter has been defined as the unlawful killing of a human being without malice, without premeditation and deliberation and without intent to kill or inflict serious bodily injury. State v. Norris, 303 N.C. 526, 279 S.E. 2d 570 (1981). All the evidence presented by the defendant suggests that he intentionally assaulted Richards with a deadly weapon knowing the assault was likely to kill or inflict serious injury. That the assault was an attempt by defendant to protect himself from Richards would support a charge of voluntary, not involuntary manslaughter. State v. Ray, 299 N.C. 151, 261 S.E. 2d 789 (1980). Because no evidence supported a charge of involuntary manslaughter, the trial court properly denied defendant's request for those instructions.

[3] Defendant next contends that it was prejudicial error for the trial court to permit the State to impeach defendant's testimony with questions about the circumstances surrounding defendant's statement to the police. Defendant points out that he was not represented by counsel at the time he refused to make a statement and such questions infringed upon his right to remain silent.

In order to preserve error at trial for appellate review defendant must have brought that error to the attention of the trial court by appropriate and timely objection. G.S. 15A-1446. Because the defendant failed to make a timely objection, this assignment of error is dismissed.

[4] Finally, defendant argues that the court committed reversible error when it denied his motion for appropriate relief. After sentencing, defendant filed a motion for appropriate relief in which he complained that the State's closing argument was violative of G.S. 15A-1230 in that the State made improper comments and referred to matters outside the trial record. In addition defendant claimed that the trial court failed to record the State's

argument after defendant requested that this be done, thus denying defendant the opportunity for appellate review.

At the hearing on the motion the court apologized to defense counsel for misunderstanding his request to have the State's closing argument recorded. The Court offered to reconstruct the argument for the record using the court's notes and the remembrances of the opposing attorneys. Apparently defendant declined the offer of the court because a reconstructed argument does not appear in the record on appeal. This Court's review on appeal is limited to what is in the record or in the designated verbatim transcript of proceedings. Rule 9(a), N.C. Rules App. Proc. An appellate court cannot assume or speculate that there was prejudicial error when none appears on the record before it. *State v. Alston*, 307 N.C. 321, 298 S.E. 2d 631 (1983). Because defendant failed to cooperate with the trial court to provide this Court with a record of the State's closing argument, we are precluded from reviewing that argument on appeal.

No error.

Judges ARNOLD and PHILLIPS concur.