STATE OF NORTH CAROLINA v. KENNETH LEON SPELLMAN

No. COA03-1526

(Filed 21 December 2004)

**1. Constitutional Law— double jeopardy—convictions for assault with a deadly weapon on a government official and assault with a deadly weapon**

The trial court did not violate defendant's right against double jeopardy by sentencing him for both assault with a deadly weapon on a government official and assault with a deadly weapon, because: (1) the facts underlying defendant's indictment for assault with a deadly weapon with intent to kill are not the same facts used to indict defendant for assault with a deadly weapon on a government official; (2) the facts underlying the jury's verdict of guilty are not the same for both offenses since one occurred when defendant's vehicle struck an officer and ran over his leg whereas the second instance occurred after defendant reentered the vehicle and drove it toward the officer thereby placing the officer in fear of injury; and (3) the evidence tended to show that defendant employed his thought process prior to committing the second assault which occurred at a distinct and separate time after the first assault was complete.

**2. Assault— deadly weapon—government official—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon on a government official even though defendant contends there was insufficient evidence to show that he intended to strike the officer with a truck, because: (1) the evidence was sufficient to allow a jury to reasonably infer that defendant operated the truck dangerously and with reckless disregard for the safety of the officer; and (2) the evidence was also sufficient to allow a jury to reasonably infer that defendant could have foreseen that death or bodily injury would be the probable result of his actions.

**3. Evidence— BB gun—plain error analysis**

The trial court did not commit plain error by allowing the State to refer to and present a BB gun in connection with the charges of armed robbery and second-degree kidnapping, because: (1) cast in the light most favorable to the State, the testi-

mony and evidence concerning the BB gun establishes only that, while holding this particular BB gun, the officer could fit his own hand inside the pocket of the jacket worn by defendant and he was unable to fit the entire BB gun inside the pocket of the jacket; (2) there was no indication at trial that a reliable chain of custody existed to link defendant to this particular BB gun; and (3) no fundamental right of defendant was violated nor would a different result have been reached had the BB gun not been marked by the State and referred to by both parties.

4. **Criminal Law— failure to record opening and closing arguments—failure to reconstruct argument**

A defendant's due process rights were not violated in a robbery with a dangerous weapon, second-degree kidnapping, assault with a deadly weapon on a government official, and assault with a deadly weapon case by the court reporter's failure to completely record the proceedings including the opening and closing arguments, because: (1) there is a presumption in favor of regularity at trial, and an appellate court cannot assume or speculate that there was prejudicial error when none appears on the record before it; and (2) defendant failed to undertake efforts necessary to secure the record pertaining to the issue since he did not attempt to reconstruct the State's opening and closing arguments, and he did not file a motion for appropriate relief or a motion to reconstruct pursuant to N.C. R. App. P. 9.

5. **Robbery— armed—failure to instruct on common law**

The trial court did not err in a robbery with a dangerous weapon case by failing to instruct to the jury on common law robbery, because: (1) although defendant sought to rebut the State's evidence regarding the use of a weapon by challenging the reasonableness of the witnesses' beliefs, defendant failed to show affirmatively that the instrument used by defendant was not a firearm or deadly weapon; and (2) the witnesses' testimony that they did not actually see or recover a weapon was insufficient to counter the mandatory presumption arising from the State's evidence that defendant possessed and used a weapon during the robbery.

6. **Sentencing— prior record level—unilateral determination**

The trial court erred in a robbery with a dangerous weapon, second-degree kidnapping, assault with a deadly weapon on a government official, and assault with a deadly weapon case by

sentencing defendant as a prior record level IV offender and the case is remanded for resentencing, because: (1) the trial court unilaterally determined that defendant had twelve prior record points; and (2) the record is devoid of any evidence of defendant's previous convictions or a stipulation by defendant regarding his prior record level.

**7. Sentencing— aggravating factors—victim suffered serious injury that is permanent or debilitating—armed with deadly weapon during commission of assault**

The trial court erred by applying the aggravating factor to defendant's sentence that the second-degree kidnapping victim suffered serious injury that is permanent or debilitating, but it did not err by finding that defendant was armed with a deadly weapon during the commission of the assault, because: (1) the record is devoid of any evidence that the victim of the second-degree kidnapping suffered any injury during the commission of the offense; and (2) the assault with a deadly weapon charge is a misdemeanor offense that was not subject to modification upon a finding of aggravating or mitigating factors, and the trial court did not enhance defendant's sentence for the assault by relying on facts used to satisfy an element of the assault.

Appeal by defendant from judgment entered 1 May 2003 by Judge Quentin T. Sumner in Nash County Superior Court.[1] Heard in the Court of Appeals 14 September 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for the State.*

*Everett & Hite, L.L.P., by Stephen D. Kiess, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Kenneth Leon Spellman ("defendant") appeals his conviction for robbery with a dangerous weapon, second-degree kidnapping, assault with a deadly weapon on a government official, and assault with a deadly weapon. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error, but we remand the case for resentencing.

---

1. We note that the indictment and conviction sheets for the assault with a deadly weapon charge are contained within File No. 00 CRS 54073, while the judgment and commitment sheet for the charge is contained within File No. 00 CRS 54093.

The State's evidence presented at trial tended to show the following: On 30 October 2000, defendant entered the Bundles of Joy children's clothing store in Rocky Mount. Shortly after defendant entered the store, the store's owner, Deborah Collins ("Mrs. Collins"), approached defendant and asked if she could help him. Defendant was wearing sunglasses and a jacket. Defendant told Mrs. Collins that he was shopping for clothing for his family members, and the two had a "casual conversation." Defendant then proceeded to the cash register with approximately $700.00 in children's clothing.

Once at the cash register, defendant asked Mrs. Collins if she had change for a thousand-dollar bill. Mrs. Collins replied that she did not, and defendant then placed his hand inside the front pocket of his jacket. Defendant laid the pocket of his jacket on the counter and demanded that Mrs. Collins give him money. At trial, Mrs. Collins testified that she could not see a muzzle or handle sticking out of defendant's pocket, but she believed defendant had a gun. According to Mrs. Collins, defendant told her, "I know you are looking at me and if you identify me, I'm going to kill you."

After Mrs. Collins gave defendant the money in the cash register, defendant instructed Mrs. Collins to place the clothing items he had brought to the counter in a bag. Defendant then instructed Mrs. Collins to disconnect the phone lines in the store, enter the restroom, and stay inside the restroom for fifteen minutes. Mrs. Collins testified at trial that defendant threatened to kill her if she did not do as he instructed. According to Mrs. Collins, prior to leaving the store defendant said, "I'm going to pick up a few more things on my way out." Defendant then exited the store with approximately $1100.00 in merchandise and cash.

As defendant fled the store, Mrs. Collins' husband, North Carolina Highway Patrol Sergeant Ertle Frank Collins, Jr. ("Sergeant Collins"), arrived at the store. Mrs. Collins informed Sergeant Collins that she had been robbed. Sergeant Collins, who was on duty and wearing his uniform at the time, then proceeded to the parking lot and approached defendant, whom Sergeant Collins had seen exiting the store when he entered.

Defendant was sitting in a red pickup truck parked in the parking lot. Sergeant Collins ordered defendant to exit the vehicle. Defendant refused, telling Sergeant Collins, "Man, I ain't got time to mess with you." Sergeant Collins then approached the truck and again instructed defendant to exit. Sergeant Collins testified that

defendant then reached for something in a bag laying on the passenger seat of the truck, which caused Sergeant Collins to back away from the vehicle.

After defendant began backing the truck out of its parking space, Sergeant Collins attempted to approach the truck a second time. Sergeant Collins tried to open the driver-side door, but defendant continued to back the truck out of the parking space. Defendant then proceeded to drive the truck through the parking lot while Sergeant Collins held onto the driver-side door. According to Sergeant Collins, the two men then "got to fighting over the steering wheel and trying to cut the truck off." During the struggle, defendant struck Sergeant Collins with his elbow while continuing to drive the truck through the parking lot.

Sergeant Collins eventually pulled defendant out of the moving truck and onto the ground. As the two men landed on the ground, Sergeant Collins was struck by the driver-side door of the truck and was run over by one of the truck's tires. Defendant immediately returned to the truck and "started toward" Sergeant Collins, whose leg had been broken when the truck ran over it. Sergeant Collins drew his weapon and fired a shot at defendant from the ground. Following the shot from Sergeant Collins, defendant stopped the truck and "hesitated." Sergeant Collins fired another shot at defendant, who then drove the vehicle from the parking lot and onto a nearby street. As defendant fled the scene, Sergeant Collins wrote down the license plate number of the truck and reported it to a 9-1-1 dispatcher.

Defendant was subsequently apprehended and indicted for robbery with a dangerous weapon, second-degree kidnapping, assault with a deadly weapon on a government official, and assault with a deadly weapon with intent to kill. Defendant was tried before a jury the week of 28 April 2003. On 1 May 2003, the jury found defendant guilty of robbery with a dangerous weapon, second-degree kidnapping, assault with a deadly weapon on a government official, and assault with a deadly weapon. The trial court sentenced defendant to a total of seventeen to twenty-two years incarceration. Defendant appeals.

---

We note initially that defendant's brief contains arguments supporting only thirteen of the original thirty-one assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2004), the omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those issues properly preserved by defendant for appeal.

The issues on appeal are: (I) whether defendant's conviction for both assault with a deadly weapon on a government official and assault with a deadly weapon violate his constitutional protection from double jeopardy; (II) whether the trial court erred by denying defendant's motion to dismiss the charge of assault with a deadly weapon on a government official; (III) whether the State's reference to and presentation of a BB gun constituted prosecutorial misconduct and violated defendant's right to due process; (IV) whether defendant was deprived of meaningful appellate review due to an incomplete recordation of the trial court proceedings; (V) whether the trial court erred by failing to instruct the jury on the lesser-included offense of common-law robbery; (VI) whether the trial court committed plain error by finding aggravating factors; and (VII) whether the State presented sufficient evidence to support the trial court's finding that defendant had twelve prior record level points and a prior record level IV.

· I.

[1] Defendant first argues that his conviction for both assault with a deadly weapon on a government official and assault with a deadly weapon violate his constitutional protection from double jeopardy. Defendant contends that the trial court was required to arrest judgment on one of the two offenses. We disagree.

We note initially that the State contends that defendant waived this argument by not asserting it during his motion to dismiss. The record reflects that defendant moved to dismiss the charge of assault with a deadly weapon at the close of the State's evidence, arguing that defendant was not in control of the truck when it ran over Sergeant Collins' leg. Defendant did not raise the issue of double jeopardy at that time. However, the record also reflects that prior to trial, defendant raised a similar issue, arguing as follows:

> Another matter that I'd like to also bring up, and I realize that this may be more appropriate at the close of the State's evidence; however, I would like to do it now so that there won't be any possibility of a waiver. One of my concerns, Your Honor, is in this case two of the charges are assault with a deadly weapon with intent to kill inflicting serious injury and assault on a government official. Under these facts, Your Honor, it's anticipated that those two assault charges involve the same victim and it seems unfair to me in terms of [defendant] receiving a fair trial how the State, I understand the argument . . . . But it seems to me that in the

interest of a fair trial, I think it prejudices or causes [defendant] harm that the State gets to do both of these assault charges when it involves the same victims. The person was either assaulted as a government official or the person was allegedly assaulted with a deadly weapon with the intent to kill inflicting serious injury. . . . Your Honor, I'd just like to raise that issue and preserve it.

To avoid waiving the right to argue the issue on appeal, "a defendant must properly raise the issue of double jeopardy before the trial court. Failure to raise this issue at the trial court level precludes reliance on the defense on appeal." *State v. White*, 134 N.C. App. 338, 342, 517 S.E.2d 664, 667 (1999) (citation omitted). "Simply put, 'double jeopardy protection may not be raised on appeal unless the defense and the facts underlying it are brought first to the attention of the trial court.' " *Id.* (quoting *State v. McKenzie*, 292 N.C. 170, 176, 232 S.E.2d 424, 428 (1977)). In light of defendant's actions in the instant case, we conclude that defendant sufficiently preserved the double jeopardy issue for appeal. Accordingly, we will address its merits *infra*.

"[T]he constitutional guaranty against double jeopardy protects a defendant from multiple *punishments* for the same offense." *State v. Partin*, 48 N.C. App. 274, 281, 269 S.E.2d 250, 255 (1980) (emphasis in original). In *Partin*, the defendants were convicted of assault with a deadly weapon under N.C. Gen. Stat. § 14-32 and assault on a law enforcement officer with a firearm. This Court arrested judgment on the defendants' convictions for assault with a deadly weapon, concluding that "[a]ssault and the use of a deadly weapon (in this case, a firearm) are necessarily included in the offense of assault on a law enforcement officer with a firearm[.]" 48 N.C. App. at 282, 269 S.E.2d at 255.

In the instant case, defendant was convicted of assault with a deadly weapon and assault with a deadly weapon on a government official. As defined by N.C. Gen. Stat. § 14-32 (2003), an individual is guilty of assault with a deadly weapon where the individual: (I) commits an assault; (II) with a deadly weapon. As defined by N.C. Gen. Stat. § 14-34.2 (2003), an individual is guilty of assault with a deadly weapon on a government official where the individual: (I) commits an assault; (II) with a firearm or other deadly weapon; (III) on a government official; (IV) who is performing a duty of the official's office. Thus, according to the definitions of the two offenses, the elements of assault with a deadly weapon are "necessarily included" in the

offense of assault with a deadly weapon on a government official. *Partin*, 48 N.C. App. at 282, 269 S.E.2d at 255.

We note that this Court reached its decision in *Partin* only after first "[c]onceding that the facts underlying defendants' indictment of assault with a deadly weapon under G.S. 14-32(a) and (c) are the same facts which underlie defendants' indictment for assault on a law enforcement officer under G.S. 14-34.2[.]" *Id.* at 279, 269 S.E.2d at 254. The necessity of such concession stemmed from our prior holding in *State v. Lewis*, 32 N.C. App. 298, 301, 231 S.E.2d 693, 694 (1977), where we concluded that "[f]or the plea of former jeopardy to be good, the plea must be grounded on the 'same offense' both in law and in fact. It is not sufficient that the two offenses arise out of the same transaction." In the instant case, we conclude that the facts underlying defendant's indictment for assault with a deadly weapon with intent to kill are not the same facts used to indict defendant for assault with a deadly weapon on a government official.

In the indictment for assault with a deadly weapon with intent to kill, the grand jury alleged that defendant "unlawfully, willfully and feloniously did assault Trooper E.F. Collins with a Ford pick-up truck, a deadly weapon, with the intent to kill him." In the indictment for assault with a deadly weapon on a government official, the grand jury alleged that defendant "unlawfully, willfully and feloniously did assault Trooper E.F. Collins with the North Carolina State Highway Patrol with a Ford pick-up truck, which is a deadly weapon[,] *by dragging him with the truck and running over the officer's leg.*" (emphasis added). Thus, although the same deadly weapon was allegedly used in both offenses, separate facts support the separate indictments.

Similarly, the facts underlying the jury's verdict of guilty of assault with a deadly weapon on a government official are not the same facts underlying the jury's verdict of guilty of assault with a deadly weapon. As the parties discussed at the charge conference, the first instance of assault with a deadly weapon occurred when defendant's vehicle struck Sergeant Collins and ran over Sergeant Collins' leg. The second instance of assault with a deadly weapon occurred after defendant reentered the vehicle and drove it toward Sergeant Collins, thereby placing Sergeant Collins in fear of injury. The evidence at trial tended to show that the second instance of assault occurred independent from the other, and the trial court instructed the jury accordingly. The jury charge contained the following pertinent instructions:

The defendant Kenneth Leon Spellman in file number 00 CRS 54072 has been charged with assault with a deadly weapon upon an officer of the State while such officer was in the performance of his duties. Now I charge that for you to find the defendant guilty of this offense the State must prove four things beyond a reasonable doubt.

First, that the defendant assaulted the victim by intentionally hitting him with a Ford pickup truck and running over his leg.

. . . .

If you do not find the defendant guilty of assault with a deadly weapon with intent to kill, you must determine whether he is guilty of assault with a deadly weapon. For you to find the defendant guilty of assault with a deadly weapon the State must prove two things beyond a reasonable doubt.

First, that the defendant assaulted the victim . . . intentionally through a show of violence by use of a Ford pickup truck. And second, that the defendant used a deadly weapon. A deadly weapon is a weapon which is likely to cause death or serious bodily injury. In determining whether a Ford pickup truck is a deadly weapon you should consider the nature of the Ford pickup truck, the manner in which it was used, and the size and strength of the defendant as compared to the victim.

"In order for a criminal defendant to be charged and convicted of two separate counts of assault stemming from one transaction, the evidence must establish 'a distinct interruption in the original assault followed by a second assault[,]' so that the subsequent assault may be deemed separate and distinct from the first." *State v. Littlejohn*, 158 N.C. App. 628, 635, 582 S.E.2d 301, 307 (quoting *State v. Brooks*, 138 N.C. App. 185, 189, 530 S.E.2d 849, 852 (2000)), *disc. review denied*, 357 N.C. 510, 588 S.E.2d 377 (2003). In *Littlejohn*, this Court found no error at trial where the defendant had been convicted for two assaults that were "distinct in time and inflicted wounds in different locations on the victim's body." 158 N.C. App. at 636, 582 S.E.2d at 307. After noting that the second assault "occurred only after the original assault had ceased and the victim had fallen to the floor[,]" we held that "the State's evidence was sufficient to show that there were indeed two separate assaults." *Id.* at 636-37, 582 S.E.2d at 307.

Similarly, in *State v. Rambert*, 341 N.C. 173, 177, 459 S.E.2d 510, 513 (1995), our Supreme Court rejected the defendant's claim that

double jeopardy protections prevented three separate convictions for discharging a firearm into occupied property. In *Rambert*, the defendant produced a gun following a verbal altercation with the victim. As the defendant fired through the victim's vehicle's windshield, the victim ducked down in a seat in the vehicle. After the victim drove his vehicle forward, the defendant fired at the victim through the passenger-side door of the victim's vehicle. As the victim continued to drive away, the defendant fired a third time into the rear of the victim's vehicle. The Court concluded that "defendant's actions were three distinct and, therefore, separate events[,]" *Id.* at 176, 459 S.E.2d at 513, noting that

> Each shot, fired from a pistol, as opposed to a machine gun or other automatic weapon, required that defendant employ his thought processes each time he fired the weapon. Each act was distinct in time, and each bullet hit the vehicle in a different place.

*Id.* at 176-77, 459 S.E.2d at 513.

The indictments in the instant case, coupled with the instructions provided to the jury, demonstrate that the two assault charges stem from separate and distinct facts. The evidence presented at trial tended to show that, after the truck had run over Sergeant Collins' leg, thereby completing the assault alleged in the indictment for assault with a deadly weapon on a government official, defendant and Sergeant Collins were laying on the ground. Defendant got up from the ground and ran approximately eighty feet across the parking lot toward the truck, which had come to rest at the curb of the parking lot. Once defendant reentered the truck, he "started toward" Sergeant Collins in the truck, then backed the truck away from Sergeant Collins and drove away from the parking lot. Thus, as in *Rambert*, the evidence in the instant case tends to show that defendant employed his thought process prior to committing the second assault, which occurred at a distinct and separate time after the first assault was completed.

"[N]either the Fourteenth Amendment to the Constitution of the United States nor Article I, § 19, of the Constitution of North Carolina forbids the prosecution and punishment of a defendant for two separate, distinct crimes[.]" *State v. Fulcher*, 294 N.C. 503, 525, 243 S.E.2d 338, 352-53 (1978). In the instant case, we conclude that two separate and distinct crimes were alleged and established, and thus the trial court did not err in imposing consecutive sentences. Accordingly, we

hold that defendant's conviction for both assault with a deadly weapon and assault with a deadly weapon on a government official did not violate defendant's constitutional protection from double jeopardy. Defendant's first argument is overruled.

II.

[2] Defendant next argues that the trial court erred by denying his motion to dismiss the charge of assault with a deadly weapon on a government official. Defendant asserts that the State failed to introduce sufficient evidence to support the charge. We disagree.

In ruling on a motion to dismiss, the trial court must consider whether there is substantial evidence of each essential element of the offense charged. *State v. Roddey,* 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). Whether the State's evidence is sufficient is a question of law for the trial court. *State v. Lowe,* 154 N.C. App. 607, 609, 572 S.E.2d 850, 853 (2002). The motion to dismiss must be denied if the evidence, viewed in the light most favorable to the State, would allow a jury to reasonably infer that defendant is guilty. *State v. Williams,* 154 N.C. App. 176, 178, 571 S.E.2d 619, 620-21 (2002).

This Court has defined an assault as " 'an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another . . . sufficient to put a [reasonable person] in fear of immediate bodily harm.' " *State v. Davis,* 68 N.C. App. 238, 244, 314 S.E.2d 828, 832 (1984) (quoting *State v. Roberts,* 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967)). While noting that "[i]ntent is an essential element of the crime of assault," this Court has recognized that "intent may be implied from culpable or criminal negligence . . . if the injury or apprehension thereof is the direct result of intentional acts done under circumstances showing a reckless disregard for the safety of others and a willingness to inflict injury." *State v. Coffey,* 43 N.C. App. 541, 543, 259 S.E.2d 356, 357 (1979) (citations omitted).

In the instant case, defendant contends that the State failed to introduce sufficient evidence that he intended to strike Sergeant Collins with the truck. However, as detailed above, the evidence presented at trial tended to show that after Sergeant Collins ordered defendant to exit the truck, defendant backed the truck out its parking space and into the parking lot. Defendant continued to drive the truck through the parking lot while Sergeant Collins held onto the driver-side door, and defendant repeatedly struck Sergeant Collins

while he was holding onto the door of the moving vehicle. Sergeant Collins testified that defendant was "trying to push me out and he's slapping at me and hitting me with his elbow and so forth as that, trying to knock me back out." We conclude that the evidence introduced by the State was sufficient to allow a jury to reasonably infer that defendant operated the truck dangerously and with reckless disregard for the safety of Sergeant Collins. The evidence was also sufficient to allow a jury to reasonably infer that defendant "could have foreseen that death or bodily injury would be the probable result of his actions." *Id.* at 544, 259 S.E.2d at 358. Accordingly, we hold that the trial court did not err in denying defendant's motion to dismiss the charge of assault with a deadly weapon on a government official. Therefore, defendant's second argument is overruled.

## III.

**[3]** Defendant next argues that the trial court committed plain error by allowing the State to refer to and present a BB gun in connection with the charges of armed robbery and second-degree kidnapping. Defendant asserts that the reference and presentation of the weapon constituted prosecutorial misconduct and violated defendant's right to due process. We disagree.

Our Supreme Court has previously held that

"[T]he plain error rule is . . . always to be applied cautiously and only . . . where . . . the claimed error is a *'fundamental* error, . . . so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or . . . has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or . . . 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]' "

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted) (emphasis in original), *cert. denied,* 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). When reviewing a defendant's assignment of plain error, the defendant "is entitled to a new trial only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones,* 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002).

In the instant case, defendant contends that in its opening statement to the jury, the State asserted that it would present evidence

regarding a BB gun found in defendant's hotel room. During the State's direct examination of Rocky Mount Police Department Corporal Gary Wester ("Corporal Wester"), the State presented and marked State's Exhibit Number 57 ("Exhibit 57"), which, according to Corporal Wester, was "a BB gun that was turned into evidence by one of [the] officers at the Rocky Mount Police Department." Corporal Wester testified that the officer who turned the BB gun into the police department "did not list his name on the evidence sheet." Corporal Wester further testified that he believed he had "read a report that Officer Collins may have done it," but that he was "not sure."

The BB gun was then neither introduced into evidence nor referred to again by the parties until defendant cross-examined Corporal Wester. During the cross-examination of Corporal Wester, the following pertinent exchange occurred:

COUNSEL: Item number 57 is the BB gun that was found at the hotel room?

WITNESS: No, sir.

COUNSEL: You found that where?

WITNESS: I did not find it at all.

COUNSEL: Where did you collect it into evidence from?

WITNESS: It was turned into the evidence room by, I believe, Officer Collins, to the Rocky Mount Police Department.

COUNSEL: And based on your job as the evidence collector for your police department where did you believe this BB gun came from?

WITNESS: According to his evidence sheet, if I can refer to that— according to the evidence sheet it was found at the Super 8 Motel, Room 132, apparently by a person by the name of Wiley, W-I-L-E-Y, John, J-O-H-N.

COUNSEL: And who is Wiley, please?

WITNESS: I have no idea, sir.

COUNSEL: Now this item that you found, the BB gun, did you process that for any of these identifiable or latent or known fingerprints that you [had previously] talked about?

STATE v. SPELLMAN

[167 N.C. App. 374 (2004)]

WITNESS:  No, sir, I did not.

[Defendant's counsel then placed the BB gun inside the right pocket of the jacket allegedly worn by defendant during the commission of the robbery.]

COUNSEL:  Do you see [the gun's] handle sticking out of [the jacket pocket]?

WITNESS:  Yes, sir, I do.

COUNSEL:  And if I take the handle and put it in first do you see the muzzle sticking out of it?

WITNESS:  Yes, I do.

[Defendant's counsel then asked Corporal Wester to place the BB gun inside the right pocket of the jacket to see if the handle would stick out.]

WITNESS:  In placing this particular BB gun in this pocket it will not go all the way in.

[Defendant's counsel then asked Corporal Wester to place the BB gun inside the right pocket of the jacket "handle-first" to see if the muzzle would stick out.]

WITNESS:  Putting it in handle first and stuffing it all the way through it still will not fit completely in the pocket.

[Defendant's counsel then asked Corporal Wester to place the BB gun inside the right pocket with the sight of the BB gun in an upright position to see if any part of the BB gun was still visible.]

WITNESS:  Yes, you can still see it sticking out.

[Defendant's counsel then asked Corporal Wester to place the BB gun inside the left pocket in the same manner as above.]

COUNSEL:  —you do agree in terms of what you demonstrated for the jury that that gun does not fit in either of those pockets?

WITNESS:  Yes, this gun does not fit in these pockets.

Following defendant's cross-examination of Corporal Wester, the State asked Corporal Wester to place the BB gun in his hand as if he were to fire it, place his hand inside the jacket pocket, and "[s]how the jury." Corporal Wester complied, and the State ended its ques-

tioning of the witness. On recross-examination, the following exchange occurred:

> COUNSEL: Stand in front of that rail. As you hold that gun, just put it on top of that bannister as though you were placing it on that bannister?
>
> [The witness complied.]
>
> COUNSEL: Can it be distinctly seen?
>
> WITNESS: Possibly, yes, sir.

Following the recross-examination of Corporal Wester, there was no mention of Exhibit 57 during the remaining witness examinations. When the State moved to introduce its exhibits into evidence, it specifically excluded Exhibit 57. The exhibit was not thereafter referred to again while the jury was in the courtroom.

Considering the record before us, we are unable to conclude that any plain error warranting a new trial occurred with respect to the presentation of the BB gun. Cast in the light most favorable to the State, the testimony and evidence concerning the BB gun establishes only that, while holding this particular BB gun, Corporal Wester could fit his own hand inside the pocket of the jacket worn by defendant. As the record reflects, Corporal Wester was unable to fit the entire BB gun inside the pocket of the jacket, and there was no indication at trial that a reliable chain of custody existed to link defendant to this particular BB gun. Thus, we are not convinced that a fundamental error occurred with respect to the BB gun. Furthermore, we are not convinced that a fundamental right of defendant was violated or that a different result would have been reached had the BB gun not been marked by the State and referred to by both parties. Accordingly, we hold that the reference to and presentation of the BB gun was not plain error. Defendant's third argument is therefore overruled.

IV.

[4] Defendant next argues that his due process rights were violated by the trial court reporter's failure to completely record the proceedings. The record reflects that prior to trial, defendant filed a written motion for full recordation of all proceedings in the instant case. On 28 April 2003, the trial court granted defendant's request. However, the trial court reporter failed to record the parties' opening and closing statements. Defendant asserts that he is entitled to a new trial as a result of the error. We disagree.

**STATE v. SPELLMAN**

[167 N.C. App. 374 (2004)]

Our Supreme Court has previously recognized that there is "a presumption in favor of regularity" at trial. *State v. Duncan,* 270 N.C. 241, 247, 154 S.E.2d 53, 58 (1967). "Thus, where the matter complained of does not appear of record, [the] appellant has failed to make irregularity manifest." *Id.* Similarly, this Court has previously held that our "review on appeal is limited to what is in the record or in the designated verbatim transcript of proceedings." *State v. Moore,* 75 N.C. App. 543, 548, 331 S.E.2d 251, 254, *disc. review denied,* 315 N.C. 188, 337 S.E.2d 862 (1985); *see* N.C.R. App. P. 9(a) (2004). Our courts have recognized that "[i]t is the duty of an appellant to see that the record on appeal is properly made up and transmitted to the appellate court," *State v. Milby and State v. Boyd,* 302 N.C. 137, 141, 273 S.E.2d 716, 719 (1981), and we have concluded that "[a]n appellate court cannot assume or speculate that there was prejudicial error when none appears on the record before it." *Moore,* 75 N.C. App. at 548, 331 S.E.2d at 254.

In *Moore,* the defendant argued in a motion for appropriate relief that the State "made improper comments and referred to matters outside the trial record" during its closing arguments. *Id.* at 547, 331 S.E.2d at 254. The defendant also argued that he was denied the opportunity for appellate review because of the trial court's failure to record the State's closing argument. On appeal, we noted that the defendant had requested the trial court record the State's closing argument, but declined the trial court's post-trial invitation to reconstruct the argument. *Id.* at 548, 331 S.E.2d at 254. Thus, we held that "[b]ecause [the] defendant failed to cooperate with the trial court to provide this Court with a record of the State's closing argument, we are precluded from reviewing the argument on appeal." *Id.* at 548, 331 S.E.2d at 254-55.

As in *Moore,* defendant in the instant case contends that as a result of the trial court reporter's failure to record the State's opening and closing statements, defendant "is deprived of his statutory right to appeal and is deprived of . . . a full and effective appellate review." Specifically, defendant states that he "cannot determine what the prosecutor argued to the jury concerning the BB gun that is such a critical piece of this case." However, as discussed above, this Court is unable to assume or speculate that prejudicial error occurred where no error appears on the record before us, and we will decline review of an issue where the appellant does not undertake those efforts necessary to secure the record pertaining to the issue. In the instant case, the record contains no indication that defendant attempted to recon-

struct the State's opening and closing arguments, and we note that defendant failed to file a motion for appropriate relief or a motion to reconstruct pursuant to N.C.R. App. P. 9. Accordingly, we are precluded from reviewing this argument on appeal, and we therefore overrule defendant's fourth argument.

V.

[5] Defendant next argues that the trial court erred in instructing the jury. Specifically, defendant contends that he provided sufficient evidence at trial to require the trial court to instruct the jury on common-law robbery. We disagree.

"When a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, *the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be—an implement endangering or threatening the life of the person being robbed." *State v. Joyner*, 312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985) (emphasis in original). "The mandatory presumption . . . is of the type which merely requires the defendant 'to come forward with *some evidence* (or take advantage of evidence already offered by the prosecution) to rebut the connection between the basic and elemental facts[.]' " *Id.* at 783, 324 S.E.2d at 844 (quoting *State v. White*, 300 N.C. 494, 507, 268 S.E.2d 481, 489 (1980)) (emphasis in original). "[W]hen *any evidence* is introduced tending to show that the life of the victim was *not* endangered or threatened, 'the mandatory presumption disappears, leaving only a mere permissive inference' " that requires the trial court to instruct the jury on common-law robbery as well as armed robbery. *Joyner*, 312 N.C. at 783, 324 S.E.2d at 844 (quoting *White*, 300 N.C. at 507, 268 S.E.2d at 489) (emphasis in original). Therefore, in deciding whether it was proper for the trial court to instruct only on armed robbery, "the dispositive issue . . . is whether any substantial evidence was introduced at trial tending to show affirmatively that the instrument used by the defendant was not a firearm or deadly weapon[.]" *State v. Williams*, 335 N.C. 518, 523, 438 S.E.2d 727, 729 (1994).

In the instant case, Mrs. Collins testified at trial that she believed her life was in danger because she believed defendant had a firearm hidden inside his jacket pocket. On direct examination, Mrs. Collins testified as follows:

> It was an object like it was pointed at me. I did not see it, but he made me aware that he would hurt me if I didn't do what he said to do. . . . I thought he had a gun, sir.

However, on cross-examination, Mrs. Collins testified that "[o]nly when [defendant] put his hand on the counter, like I showed earlier, was something bulging out of the pocket [of his jacket]." Mrs. Collins also testified that she did not notice anything in defendant's jacket when he was talking to her while inside the store. Mrs. Collins further testified that she did not see a muzzle or handle of a gun sticking out of defendant's jacket pocket. Although Sergeant Collins testified on direct examination that he saw defendant "reach over up under the bags" laying in the passenger seat of defendant's vehicle, Sergeant Collins testified on cross-examination that he did not see anything after witnessing defendant reach toward the bags. Notwithstanding the BB gun discussed above, no weapon that could be linked to defendant was recovered following the robbery.

We conclude that the evidence in the instant case is insufficient to extinguish the mandatory presumption discussed in *Joyner*. Although defendant sought to rebut the State's evidence regarding the use of the weapon by challenging the reasonableness of the witnesses' beliefs, defendant failed to "show affirmatively that the instrument used by the defendant was not a firearm or deadly weapon[.]" *Williams*, 335 N.C. at 523, 438 S.E.2d at 729 (approving use of mandatory presumption where victim believed defendant possessed a gun after he pulled an object "wrapped in something" from his pocket, despite defendant's testimony that he did not own or "mess with guns"); *see State v. Lee*, 128 N.C. App. 506, 510-11, 495 S.E.2d 373, 376 (1998) (approving use of mandatory presumption where victim did not see a weapon but testified that defendant covered her head and threatened to shoot her if she resisted). The witnesses' testimony that they did not actually see or recover a weapon was insufficient to counter the mandatory presumption arising from the State's evidence that defendant possessed and used a weapon during the robbery. Accordingly, we hold that the trial court did not err in refusing to instruct the jury on common-law robbery, and we therefore overrule defendant's fifth argument.

## VI.

[6] Defendant next presents two arguments regarding the sentencing phase of his trial. Defendant argues that the trial court erred by sentencing defendant as a prior record level IV offender and by applying

aggravating factors to defendant's sentence. We agree that the trial court erred in its assignment of defendant's prior record level, and we agree in part that the trial court erred in applying certain aggravating factors to defendant's sentence. Therefore, we remand the case to the trial court for resentencing in light of the following analysis.

N.C. Gen. Stat. § 15A-1340.14 (2003) requires that each of a felony offender's prior convictions be proven to determine the offender's prior record level. N.C. Gen. Stat. § 15A-1340.14(f) provides that the State bears the burden of proving any prior convictions by a preponderance of the evidence. Specifically, N.C. Gen. Stat. § 15A-1340.14(f) lists several methods the State may use to prove prior convictions, including the following:

(1)  Stipulation of the parties.

(2)  An original or copy of the court record of the prior conviction.

(3)  A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4)  Any other method found by the court to be reliable.

In *State v. Riley*, 159 N.C. App. 546, 557, 583 S.E.2d 379, 387 (2003), although the State declared at trial that the defendant had seven prior record level points, the State nevertheless submitted "no records of conviction, no records from the agencies listed in N.C.G.S. § 15A-1340.14(f)(3), nor . . . any evidence of a stipulation by the parties as to a prior record level." On appeal, we held that "[a] statement by the State that an offender has seven points, and thus is a record level III, if only supported by a prior record level worksheet, is not sufficient to meet the catchall provision found in N.C.G.S. § 15A-1340.14(f)(4), even if uncontested by defendant." *Id.* (citing *State v. Mack*, 87 N.C. App. 24, 34, 359 S.E.2d 485, 491 (1987), *disc. review denied*, 321 N.C. 477, 364 S.E.2d 663 (1988), and *State v. Hanton*, 140 N.C. App. 679, 690, 540 S.E.2d 376, 383 (2000)).

In the instant case, the State concedes that the trial court erred in unilaterally determining that defendant had twelve prior record level points and was therefore a prior record level IV offender. As in *Riley*, notwithstanding the judgment and commitment worksheet filed by the trial court, the record in the instant case is devoid of any evidence of defendant's previous convictions or a stipulation by defendant regarding his prior record level. Therefore, in light of our

previous decisions regarding prior record level assignment, we must remand the case for resentencing.

[7] Furthermore, we note that the judgment and commitment sheets indicate that the trial court made identical findings of aggravating and mitigating factors in sentencing defendant for the following three offenses: second-degree kidnapping, assault with a deadly weapon on a government official, and the consolidated multiple charges of common-law robbery, a felony, and assault with a deadly weapon, a misdemeanor. Specifically, the judgment and commitment sheet for each offense indicates that the trial court found the following aggravating factors: (i) defendant was armed with a deadly weapon at the time of the crime; (ii) the offense involved an attempted taking of property of great monetary value; and (iii) the victim of the offense suffered serious injury that is permanent and debilitating. After finding that the aggravating and mitigating factors balanced, the trial court sentenced defendant at the highest end of the presumptive range for the offenses of second-degree kidnapping and assault with a deadly weapon on a government official, and the lowest end of the presumptive range for the consolidated offenses of common-law robbery and assault with a deadly weapon.

While "[n]o appellate court in this State has ever held that the same factor may not be used to aggravate more than one conviction," *State v. McCullers*, 77 N.C. App. 433, 436, 335 S.E.2d 348, 350 (1985), the facts used to enhance a sentence must be supported by sufficient evidence in the record. *State v. Rose*, 327 N.C. 599, 606, 398 S.E.2d 314, 317 (1990). In the instant case, the record is devoid of any evidence that the victim of the second-degree kidnapping, Mrs. Collins, suffered any injury during the commission of the offense. Thus, the trial court's finding that the victim of the second-degree kidnapping offense suffered serious injury that is permanent or debilitating must be reversed. Although we conclude that the trial court did not err in applying the other aggravating factors to the offense, we note that the trial court sentenced defendant in the presumptive range for second-degree kidnapping after determining that a balance of aggravating and mitigating factors existed. Therefore, we remand the offense for resentencing following exclusion of the aggravating factor of serious injury from the trial court's consideration.

Defendant maintains that the trial court was prohibited from enhancing the assault sentences by finding that defendant was armed with a deadly weapon during the commission of the offenses. We disagree.

We note initially that defendant's argument regarding the application of the aggravating factor to the assault with a deadly weapon charge is without merit, as the crime is a misdemeanor offense and therefore not subject to modification upon a finding of aggravating or mitigating factors. *See* N.C. Gen. Stat. § 15A-1340.16 (2003) (listing factors for consideration of aggravated and mitigating sentences for felony convictions); N.C. Gen. Stat. § 15A-1340.20 (2003) (stating that a sentence "imposed for a misdemeanor shall contain a sentence disposition specified for the class of offense and prior conviction level[,]" and providing no consideration of aggravating and mitigating factors); *State v. Clark*, 107 N.C. App. 184, 190-91, 419 S.E.2d 188, 192 (1992) ("The trial court did not need to find an aggravating factor for the breaking and entering count since the defendant was convicted of a misdemeanor which is not subject to N.C. Gen. Stat. § 15A-1340.4(b). The finding of an aggravating factor for the misdemeanor conviction, therefore, was superfluous and non-prejudicial error."). In support of his assertion that the aggravating factor should not have been applied to the charge of assault with a deadly weapon on a government official, defendant cites *State v. Barbour*, 104 N.C. 793, 797, 411 S.E.2d 411, 413 (1991), in which this Court held that the trial court is prohibited from enhancing a defendant's sentence for assault with a deadly weapon with intent to kill inflicting serious injury by relying on the defendant's use of the deadly weapon to commit the crime. However, our decision in *Barbour* is inapplicable to the instant case, because here the trial court enhanced defendant's sentence by finding that defendant was *armed* with a deadly weapon during the commission of the assault rather than *used* a deadly weapon during the commission of the assault. Furthermore, the deadly weapon used during the commission of the assault (the Ford pickup truck) was not the same deadly weapon defendant was armed with during the commission of the assault (the gun Mrs. Collins testified that defendant possessed). Thus, because the trial court did not enhance defendant's sentence for the assault by relying on facts used to satisfy an element of the assault, we conclude that the trial court did not err in finding that defendant was armed with a deadly weapon during the commission of the offense.

VII.

Based upon the foregoing conclusions, we hold that defendant received a trial free of prejudicial error, but we remand the case to the trial court for resentencing. On remand, the trial court is instructed to hear and receive any evidence regarding defendant's

prior felony convictions necessary to satisfy the requirements of N.C. Gen. Stat. § 15A-1340.14, and to resentence defendant consistent with this opinion.

No error in part; remanded in part.

Judges HUNTER and McCULLOUGH concur.