STATE OF NORTH CAROLINA v. ROBERT GLENN JOYNER

No. 175A84

(Filed 30 January 1985)

1. **Criminal Law § 32.2; Robbery § 4.3— apparent use of firearm—presumption of danger or threat to life**

   Where there is evidence that defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon and nothing to the contrary appears in evidence, the presumption that the victim's life was endangered or threatened is mandatory. If the jury in such cases finds the basic fact (that the robbery was accomplished with what appeared to the victim to be a firearm or other dangerous weapon), the jury must find the elemental fact (that a life was endangered or threatened).

2. **Criminal Law § 32.2; Robbery § 4.3— presumption of danger or threat to life— rebutting evidence—permissive inference**

   The mandatory presumption of danger or threat to life merely requires the defendant to come forward with some evidence (or take advantage of evidence already offered by the prosecution) to rebut the connection between the basic and elemental facts. When any evidence is introduced tending to show that the life of the victim was not endangered or threatened, the mandatory presumption disappears, leaving only a permissive inference which permits but does not require the jury to infer the elemental fact (danger or threat to life) from the basic fact proven (robbery with what appeared to the victim to be a firearm or other dangerous weapon).

3. **Criminal Law § 32.2; Robbery § 4.3— inference of danger or threat to life— when permitted**

   The trial court may permit the jury to make the inference of a danger or threat to life only if, in light of all the evidence, there continues to be a rational connection between the basic fact proved and the elemental fact to be inferred, and the latter is more likely than not to flow from the former. Although the burden of proof beyond a reasonable doubt always remains with the State, defendant has the burden of demonstrating to the court the invalidity of the permissive inference as applied in his case.

4. **Robbery § 4.3— threat or danger to life—rebutting evidence—permissive inference**

   Testimony by detectives that a rifle defendant said he used in a robbery was unloaded and without a firing pin when discovered some six hours after the crime, evidence of a statement made by defendant more than six hours after the crime that the rifle would not fire, and testimony by a detective as to the manner in which the hammer could be removed from a .38 caliber pistol amounted to "some evidence" from which the jury could but was not required to infer that the rifle was unloaded and had no firing pin at the time of the robbery and that no life was endangered or threatened. Therefore, the mandatory presumption of danger or threat to life disappeared, leaving a mere permissive inference to that effect, and the trial court properly left the jury

free to infer either that the disputed element of the offense of armed robbery did or did not exist when it instructed on possible verdicts of guilty of armed robbery, guilty of common law robbery and not guilty.

Justice VAUGHN took no part in the consideration or decision of this case.

APPEAL of right under N.C.G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, 67 N.C. App. 134, 312 S.E. 2d 681 (1984), finding no error in the judgment or sentence for armed robbery entered against the defendant by *Judge John B. Lewis, Jr.* on March 1, 1983 in Superior Court, PITT County. Heard in the Supreme Court September 11, 1984.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Robert L. Shoffner, Jr., Assistant Public Defender, Third Judicial District, for the defendant appellant.*

MITCHELL, Justice.

The controlling question presented is whether the State's evidence that the defendant endangered or threatened the life of the victim was sufficient to overcome the defendant's motion for a directed verdict on the charge of robbery with firearms or other dangerous weapons (armed robbery). We hold that the evidence was sufficient in this regard and affirm the decision of the Court of Appeals finding no error in the defendant's trial and conviction.

The defendant was tried upon an indictment proper in form for robbery with firearms or other dangerous weapons (armed robbery). N.C.G.S. 14-87. At trial the State introduced evidence tending to show that Wayne Williams and two other employees of Domino's Pizza at Charles Street Boulevard in Greenville, North Carolina were closing the business for the night at approximately 2:45 a.m. on December 7, 1982. They had placed the day's receipts of approximately $2,200 in cash and checks into a bank bag for the purpose of making a night bank deposit after closing. They left the building with Williams carrying the bank bag. Immediately after he locked the side door and began to walk away from the building, Williams was pushed from behind. He whirled around and saw a man wearing a Halloween type mask. The man was holding a rifle with his finger on the trigger and the end of the barrel about sixteen inches from Williams' face. He demanded

that Williams give him the money and said "Damn it, I'll kill you." Williams shoved the bank bag at the man and dropped it to the ground. Williams then ran from the scene. One of the other employees had already departed. The third employee stood still and watched as the robber picked up the bank bag and ran away.

Detectives of the Greenville Police Department arrived at a residence where they found the defendant at approximately 8:30 a.m. on December 7. After advising the defendant of his constitutional rights, the detectives began questioning him. Sometime shortly thereafter, the defendant confessed that he had committed the robbery at Domino's Pizza. He then took the detectives to an old abandoned building located several blocks from the residence and approximately one-half mile from Domino's Pizza and showed them where he had hidden a .22 caliber bolt action rifle he said he had carried during the robbery. The detectives took custody of the rifle and determined at that time that it was unloaded. The defendant then took the detectives to an apartment where he had hidden the bank bag approximately three miles from Domino's Pizza. The detectives retrieved the bank bag which still contained the checks taken in the robbery but none of the cash.

After recovering the rifle and bank bag, the detectives took the defendant to the magistrate's office where he gave a written statement. During some of their conversations at that time, the defendant stated that the rifle would not fire. At some later time, the detectives determined that the firing pin was missing from the rifle.

The defendant offered no evidence.

The trial court instructed the jury that they could return a verdict of guilty of armed robbery, guilty of common law robbery or not guilty. The jury found the defendant guilty of armed robbery, and the trial court entered judgment thereon and sentenced the defendant to a fourteen year term of imprisonment.

The defendant assigns as error the trial court's denial of his motion for a directed verdict of not guilty on the armed robbery charge. In support of this assignment, he contends that the State's evidence conclusively showed that the rifle he used was not loaded and did not have a firing pin at the time of the rob-

bery. The defendant argues that, this being the case, the State's evidence conclusively showed that the robbery was not committed in such manner as to endanger or threaten the life of any person. We do not agree.

The defendant was convicted of a violation of N.C.G.S. 14-87, which provides in pertinent part:

> (a) Any person . . . who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another . . . shall be guilty of a Class D felony.

In determining whether a robbery with a particular implement constitutes a violation of this section, "the determinative question is whether the evidence was sufficient to support a jury finding that a person's *life* was in fact endangered or threatened." *State v. Alston*, 305 N.C. 647, 650, 290 S.E. 2d 614, 616 (1982).

[1] When a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, *the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be — an implement endangering or threatening the life of the person being robbed. *State v. Thompson*, 297 N.C. 285, 289, 254 S.E. 2d 526, 528 (1979). Thus, where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon *and nothing to the contrary appears in evidence*, the presumption that the victim's life was endangered or threatened is mandatory. *See State v. Thompson*, 297 N.C. 285, 254 S.E. 2d 526 (1979). If the jury in such cases finds the basic fact (that the robbery was accomplished with what appeared to the victim to be a firearm or other dangerous weapon), the jury must find the elemental fact (that a life was endangered or threatened). This is so because, when *no evidence* is introduced tending to show that a life was not endangered or threatened, "no issue is raised as to the nonexistence of the elemental facts and the jury may be directed to find the elemental facts if it finds the basic facts to exist beyond a reasonable doubt." *State v. White*, 300 N.C. 494, 507, 268 S.E. 2d 481, 489, *rehearing den.*, 301 N.C. 107, 273 S.E. 2d 443 (1980).

When considering the validity of a mandatory presumption, courts generally examine the presumption *on its face* and without regard for the facts of the particular case "to determine the extent to which the basic and elemental facts coincide." *Ulster County Court v. Allen*, 442 U.S. 140, 157-58 (1979); *State v. White*, 300 N.C. at 503, 268 S.E. 2d at 487. Viewing the mandatory presumption under consideration here in such light, we conclude that, when *no evidence* to the contrary is introduced, it will be unerringly accurate "in the run of cases" to which it may be applied and, standing alone, will support a jury's finding that a person's life was endangered or threatened beyond a reasonable doubt. Therefore, the presumption is valid. *Ulster County Court v. Allen*, 442 U.S. at 159; *State v. White*, 300 N.C. at 507, 268 S.E. 2d at 489. In such cases, the trial court correctly permits the jury to consider possible verdicts of guilty of armed robbery or not guilty.

[2] The mandatory presumption under consideration here, however, is of the type which merely requires the defendant "to come forward with *some evidence* (or take advantage of evidence already offered by the prosecution) to rebut the connection between the basic and elemental facts. . . ." *State v. White*, 300 N.C. at 507, 268 S.E. 2d at 489. Therefore, when *any evidence* is introduced tending to show that the life of the victim was not endangered or threatened, "the mandatory presumption disappears, leaving only a mere permissive inference. . . ." *Id.* The permissive inference which survives permits but does not require the jury to infer the elemental fact (danger or threat to life) from the basic fact proven (robbery with what appeared to the victim to be a firearm or other dangerous weapon). *See generally State v. White*, 300 N.C. 494, 268 S.E. 2d 481 (1980). *See State v. Alston*, 305 N.C. 647, 290 S.E. 2d 614 (1982).

[3] The inference remaining being permissive, the trial court must analyze its application to the case at hand and permit the jury to make the inference only if, in light of all the evidence, there continues to be a "rational connection" between the basic fact proved and the elemental fact to be inferred, and the latter is "more likely than not to flow from" the former. *Ulster County Court v. Allen*, 442 U.S. at 165; *Leary v. United States*, 395 U.S. 6, 36 (1969); *State v. White*, 300 N.C. at 504, 268 S.E. 2d at 488. Although the burden of proof beyond a reasonable doubt always

remains upon a State, the defendant has the burden of demonstrating to the court the invalidity of the permissive inference as applied in his case. *Ulster County Court v. Allen*, 442 U.S. at 157; *State v. White*, 300 N.C. at 503, 268 S.E. 2d at 487. If the defendant makes such a showing, the trial court may not allow the inference to be made by the jury.

[4]   The defendant contends that the State's evidence conclusively showed that the rifle used in the robbery was unloaded and without a firing pin at the time the robbery was committed and could not have endangered or threatened anyone's life at that time. He further contends that this being the case, the trial court erred in permitting the jury to consider and return the verdict of guilty of armed robbery. He contends that the trial court instead should have permitted the jury to consider only possible verdicts of guilty of common law robbery or not guilty. We find the defendant's contentions in this regard without merit.

The defendant first directs our attention to those portions of the State's evidence tending to show that the rifle the defendant said he used in the robbery was unloaded and without a firing pin at the time it was recovered by the detectives approximately *six hours after the robbery*. Assuming *arguendo* that such evidence tended to show that the rifle in question was unloaded and without a firing pin at the time the robbery was committed, it was *some evidence* of the nonexistence of the element of danger or threat to life. *But cf., Sloan v. Light Co.*, 248 N.C. 125, 102 S.E. 2d 822 (1958). (As a general rule, proof of the existence of a condition at a given time does not raise a presumption that the same condition existed previously.) Such evidence only removed the mandatory presumption in the present case and required the trial court to permit the jury also to consider a possible verdict of guilty of the lesser included offense of common law robbery. *See State v. Alston*, 305 N.C. 647, 290 S.E. 2d 614 (1982). It was not, however, so compelling as to prevent a permissive inference of danger or threat to life or to require a directed verdict in the defendant's favor on the armed robbery charge.

The statement of the defendant to the detectives that the rifle would not fire was made some time after the rifle was recovered and more than six hours after the robbery. The defendant did not state that the rifle would not fire at the time the

crime was committed. Likewise, the testimony by the detectives was only that the rifle was unloaded and without a firing pin when discovered some six hours after the crime. Even if the jury believed that the rifle the defendant led the detectives to was in fact the rifle he used during the robbery, the foregoing evidence would not require the jury to infer that the rifle was in the same condition at the time of the robbery.

The defendant next calls our attention to testimony of Detective Lee Garrish which the defendant also contends showed that the rifle in question could not have endangered or threatened anyone's life at the time the robbery was committed. During cross examination of Detective Garrish by the defendant, the following transpired:

Q. Now, if this had a firing pin in it, looking at that clock, how long would it take you to remove it with, you know, no tools on you?

A. Remove what?

Q. The firing pin. Would it be very simple to do that?

A. I'm not sure. I'm not—

Q. You don't know whether you'd have to take tools to get it out or not?

A. Now, I'm not familiar with this type of weapon.

Detective Garrish then went on to describe briefly and in very general terms how one would go about removing the hammer from some unspecified type of .38 caliber pistol. He then indicated that, except for the fact that the firing pin was missing, he saw nothing indicating that the rifle had been tampered with or disassembled at the time he took it into his custody.

The defendant argues in his brief before this Court that:

Defendant's cross-examination of Detective Garrish as to how long it would take to remove the firing pin from the rifle in question, the tools needed to remove the pin, and whether the rifle showed any signs that it had been tampered with was designed to remove any contention that defendant committed the robbery and then ran to the old building and by

the light of the moon, quickly removed the firing pin before placing the rifle behind the building.

Assuming that the defendant's cross examination of Detective Garrish was designed to achieve this result, it failed. Detective Garrish testified specifically that he had no familiarity with the procedures involved in removing a firing pin from a bolt action .22 rifle such as the one in evidence in the present case. His testimony as to the manner in which the hammer could be removed from an unspecified type of .38 caliber pistol had little if any probative value in the present case, even if it is assumed that it was admissible. Nothing in the evidence tends to indicate that the method of removing a firing pin from a bolt action .22 caliber rifle is in any way similar to the method used in removing the hammer from any type of .38 caliber pistol. Nor does anything in the evidence indicate that testimony concerning the method for removing the hammer from an unspecified type of .38 caliber pistol is in any way relevant to the issues arising in the present case.

All of the evidence to which the defendant directs our attention, when taken together, amounted to "some evidence" from which the jury could but was not required to infer that the rifle was unloaded and had no firing pin at the time of the robbery and that no life was endangered or threatened. As a result, the mandatory presumption of danger or threat to life arising from the defendant's use of what appeared to the victim to be a firearm or other dangerous weapon disappeared leaving a mere permissive inference to that effect. *See generally State v. White*, 300 N.C. 494, 268 S.E. 2d 481 (1980). *See State v. Alston*, 305 N.C. 647, 290 S.E. 2d 614 (1982). The result was that the jury was free to infer either that the disputed element of the offense of armed robbery did or did not exist. The trial court correctly provided for both possibilities when it properly instructed the jury that they were to consider possible verdicts of guilty of armed robbery, guilty of the lesser included offense of common law robbery and not guilty. The evidence relied upon by the defendant, however, was not so compelling as to make the use of the permissive inference of danger or threat to life inappropriate in the present case or to require the trial court to enter a directed verdict in the defendant's favor on the charge of armed robbery.

It is appropriate to point out that the statement of the robber to the victim during the course of the robbery that he would kill the victim was also some evidence which would tend to support a finding that life was endangered or threatened. Although such evidence is irrelevant when considering the constitutionality of a mandatory presumption, all of the evidence should be considered by courts when determining whether to allow the use of a permissive inference in a given case. *Ulster County Court v. Allen*, 442 U.S. at 159-60.

The defendant has also sought on appeal to challenge portions of the trial court's final mandate to the jury. The defendant failed to object to the charge at trial as required by Rule 10(b)(2), Rules of Appellate Procedure. Therefore, our review on appeal is limited to a review for "plain error" as that term is defined in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). We find none.

For the foregoing reasons, the decision of the Court of Appeals finding no error in the defendant's trial is

Affirmed.

Justice VAUGHN took no part in the consideration or decision of this case.