STATE OF NORTH CAROLINA v. KIMBERLY CATRICE WILSON A/K/A KIM WILSON

No. COA94-931.

(Filed 5 March 1996)

**1. Appeal and Error § 502 (NCI4th)— failure to show different result but for error**

    A defendant wishing to overturn a conviction on the basis of error relating to non-constitutional rights has the burden of showing a reasonable possibility that a different result would have been reached at trial absent the error; and defendant failed to meet this burden where the record contained abundant evidence that she was properly convicted of robbery with a firearm.

**Am Jur 2d, Appellate Review §§ 705, 711, 713, 716.**

## 2. Robbery § 135 (NCI4th)— gun used in robbery—dangerous firearm—instruction on lesser offense not required

In a prosecution for robbery with a firearm, because defendant's testimony that the gun looked and felt similar to a BB gun did not rise to the level of being evidence contrary to her own and the victim's testimony that the gun used in the robbery was what it appeared to be, a dangerous firearm, the trial court properly refused to give an instruction on the lesser included offense of common law robbery.

**Am Jur 2d, Robbery §§ 75, 76.**

## 3. Criminal Law § 1227 (NCI4th)— cocaine addiction—no mitigating factor found—no error

Where defendant presented no evidence compelling a conclusion that her culpability for an armed robbery was significantly reduced by her cocaine addiction, the trial court properly refused to find the addiction as a mitigating factor under N.C.G.S. § 15A-1340.4(2)(d).

**Am Jur 2d, Criminal Law § 598.**

Appeal by defendant from judgment entered 11 May 1994 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 17 April 1995.

The State's evidence tended to show that at about midnight on the evening of 21 July 1993, the prosecuting witness heard noises at the back door of his apartment. When he went to investigate, he found the defendant, Kimberly Catrice Wilson, and another woman, Dwanda Howard, standing outside. Although the victim did not know the women, he had seen them several times before when they had come by the apartment searching for his roommate. One of the women pointed a gun at the victim and demanded he let them in.

Once inside, the two women, who referred to each other using the nicknames "Shorty" and "Smooth," asked about the victim's roommate and stated that the victim would pay for something the roommate had done to them. One or both of the women took him to an upstairs bedroom, pointed a gun at his head, and bound his feet and hands with telephone cord and the electric cord from an alarm clock. While being tied, he was repeatedly told the women were going to shoot him or take him with them. The victim's hands and feet were tied so tightly that Wilson later testified he began to "change colors."

STATE v. WILSON

[121 N.C. App. 720 (1996)]

One of the women then tied a pair of socks together and strapped them around his mouth.

He remained tied for approximately two hours. During this time, Wilson drank some bourbon and listened to the radio while Howard took a shower. The women then took three duffel bags of clothing belonging to the victim and his roommate, some stereo equipment, and approximately $100 in cash that was hidden in a drawer. Before leaving, they covered the apartment in cooking oil and deodorant spray in an attempt to remove any fingerprints. Finally, the women took the victim's keys and left the scene in his car.

When he no longer heard the women downstairs, the victim attempted to free himself and was able to loosen the cord around his feet enough to be able to walk. He went outside in search of help and was spotted by two police officers on routine patrol. The officers untied his feet and cut the cord binding his hands.

Based on information given by the victim and his roommate concerning the women's nicknames and their physical appearance, arrest warrants were issued for Wilson and Howard. Howard pleaded guilty to armed robbery and received a fifteen-year sentence. Wilson pleaded not guilty and was tried before a jury in Pitt County Superior Court on 11 May 1994. The jury returned a verdict of guilty of robbery with a firearm and Wilson was sentenced to a term of forty years. From this judgment and sentence, Wilson appeals.

*Michael F. Easley, Attorney General, by Edwin L. Gavin II, Assistant Attorney General, for the State.*

*Public Defender Robert L. Shoffner, Jr., by Assistant Public Defender James K. Antinore, for defendant-appellant.*

McGEE, Judge.

Defendant Wilson brings forth six arguments on appeal. After a review of the record and transcript, we find no error.

I.

[1] Most of the defendant's assignments of error and arguments deal with her contention that while she admits participation in taking the victim's property, she is only guilty of felonious larceny or common law robbery, not guilty of robbery with a firearm. In support of this contention, Wilson argues she should have been allowed to continue cross-examination of Detective Janice Harris concerning the allega-

**STATE v. WILSON**

[121 N.C. App. 720 (1996)]

tions contained in the warrant and she should have been allowed to introduce into evidence certain statements made by Howard. Wilson also contends the trial court erred by denying her motion to dismiss at the close of all the evidence for insufficient evidence to support the offense charged. We disagree.

Although we see no error in the rulings of the trial court to which Wilson has objected, we need not reach the merits of these arguments. A defendant wishing to overturn a conviction on the basis of error relating to non-constitutional rights has the burden of showing a reasonable possibility that a different result would have been reached at trial absent the error. N.C. Gen. Stat. § 15A-1443(a) (1988). Wilson has not met this burden. The record contains abundant evidence that defendant was properly convicted of robbery with a firearm. Although the jury was also instructed on the theory of acting in concert, there is ample evidence that Wilson's own acts constituted armed robbery.

The elements necessary to constitute armed robbery are: 1) the unlawful taking or an attempt to take personal property from the person or in the presence of another; 2) by use or threatened use of a firearm or other dangerous weapon; 3) whereby the life of a person is endangered or threatened. N.C. Gen. Stat. § 14-87. Wilson admitted during her testimony she actively participated in the taking of the victim's and his roommate's property, stating she carried two of the three bags of clothing from the apartment to the car. Therefore the taking element was established and the State only had to also prove Wilson used a dangerous weapon to threaten or endanger the victim's life. The record shows the State sufficiently proved these elements and the trial court correctly denied Wilson's motion to dismiss for insufficiency of the evidence to support the offense charged.

On direct examination, the victim was asked the following:

Q: And the young woman who held the gun to your head and robbed you is in this courtroom; is that correct?

A: Yeah. She's right there (indicating).

THE COURT: Ah, who are you [pointing to]—

WITNESS: Ms. Wilson.

Upon cross-examination, the victim testified as follows:

Q: Ah, upon closer questioning you say that [the defendant] was the girl with the gun?

A: It was.

Q: Well, why did you say "I think, I believe" [defendant was the one with the gun]?

A: Because, um, it's been a year.

Q: Yes, sir. Ah, so you think it was her but it's entirely possible it was the other girl?

A: It was her.

Q: Huh?

A: It was her.

On recross-examination, after admitting he did not remember whether one or both of the women initially took him upstairs and tied him, the victim was asked if both of the women were eventually upstairs. He replied: "Yeah, they were both up there, and both had had the gun to my head. They both threatened my life. And they both took my stuff." Wilson admitted holding the gun while being in the same room where the victim was tied up, saying: "I was sitting on the bed with the gun in my hand, laying [sic] up against the bed." However, she denied ever pointing the gun at the victim.

Wilson now claims the trial court erred in striking testimony of Detective Harris concerning the substance of the arrest warrant. She argues the warrant, although it states the offense charged is robbery with a dangerous weapon, fails to allege the use of a firearm or other dangerous weapon in the description of the offense. The judge stopped the defense questioning of Harris regarding the warrant, believing the questioning concerned the validity of the warrant, which is a question of law for the court, not the jury. Wilson claims the purpose of this line of questioning was not to question the warrant, but to "support defendant's defense [of felonious larceny/common law robbery] and . . . to weaken the State's case by impeaching the charging officer's credibility." However, even if the striking of this testimony constituted error, in light of the State's overwhelming evidence of Wilson's guilt of robbery with a firearm, we fail to see how a different result would have been reached at trial absent the error.

Likewise, we find no prejudicial error in the trial court's exclusion of statements made by Dwanda Howard, which Wilson claims show it was Howard's idea to commit the robbery. The trial court ruled the statements were hearsay, with no applicable exception. We agree the statements were inadmissible. However, even if the trial court erroneously excluded them, it makes no difference who actually planned the robbery. In light of the evidence of Wilson's active participation in the crime, she cannot show a different result would have been reached if the statements had been admitted into evidence. Wilson also claims Howard made other statements which support her defense. However, she made no offer of proof at trial of such statements, they are not part of the record, and we may not consider them on appeal. N.C.R. App. P. 9(a).

## II.

[2] Wilson argues the trial court erred by refusing to instruct the jury on the lesser included offense of common law robbery. We disagree.

When a person commits a robbery by the use or threatened use of what appears to be a firearm or dangerous weapon, the law presumes, absent any evidence to the contrary, that the instrument is what it appears to be—a weapon endangering the life of the person being robbed. *State v. Thompson*, 297 N.C. 285, 289, 254 S.E.2d 526, 528 (1979). This presumption is mandatory when no evidence is introduced to show the victim's life was not in danger. *State v. Joyner*, 312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985). However, if the defendant comes forward with some evidence tending to show the instrument was not a dangerous weapon, then the mandatory presumption disappears and the jury may, but is not required to, infer the instrument used was a dangerous weapon. *Joyner*, 312 N.C. at 783, 324 S.E.2d at 844. In such a case, instruction on the lesser included offense of common law robbery should also be given. *See Joyner*, 312 N.C. at 786, 324 S.E.2d at 846.

When faced with this question, our Supreme Court said: "The dispositive issue . . . is whether any substantial evidence was introduced at trial tending to show affirmatively that the instrument used by the defendant was not a firearm or deadly weapon . . . ." *State v. Williams*, 335 N.C. 518, 523, 438 S.E.2d 727, 729 (1994). In this case, Wilson's evidence fails to meet this test.

On direct examination, Wilson was asked if she had ever seen a BB pistol or an air pistol, and she replied that she had. When asked

STATE v. WILSON

[121 N.C. App. 720 (1996)]

whether the pistol used in the robbery looked at all like an air pistol, she replied: "Yes, it did." She was then asked if she had ever held and was familiar with the weight of a BB pistol, to which she replied: "Yes, sir." When asked to compare the experience of holding a BB pistol to holding the gun used in the robbery, Wilson stated: "It felt about the same." Wilson never testified she believed the gun was a BB pistol. She did not provide any evidence tending to affirmatively show the weapon was not a firearm. Instead, in response to her counsel's leading questions, she simply stated the gun looked and felt "similar" to a BB pistol. This testimony does not rise to the level of being evidence contrary to the State's evidence that the gun was what it appeared to be, a dangerous weapon. *See Thompson*, 297 N.C. at 289, 254 S.E.2d at 528. Nor does it "amount to substantial evidence to the contrary tending to show that [she] did not employ a firearm" during the robbery. *Williams*, 335 N.C. at 523, 438 S.E.2d at 730. This is especially true in light of other testimony given by Wilson.

At the beginning of her cross-examination, Wilson testified as follows:

Q:  Now, Ms. Wilson, previously you stated when you were testifying that the gun was a black gun?

A:  Yes.

Q:  Was an automatic?

A:  It was an automatic, yes.

Q:  And looked like a .25?

A:  Yes.

Q:  All Right. And you know about guns, don't you?

A:  Yes.

Wilson also testified she did not untie the victim because "[Howard] had the gun," and "[b]ecause I was scared." Wilson's testimony shows she believed the gun to be a firearm. Further, after Wilson testified the gun looked similar to a BB gun, the victim was recalled to the stand. When asked to describe the gun, he testified: "It was black. Um, there was no way it was a BB gun. [The barrel] had a diameter of about around a half—half an inch to three-quarters of an inch." He also stated he had an opportunity to look down the barrel a number of times. Because Wilson's testimony that the gun looked and felt similar to a BB gun does not rise to the level of being evidence contrary

to her own and the victim's testimony that the gun used in the robbery was a firearm, the trial court properly refused to give an instruction on the lesser included offense of common law robbery.

## III.

Wilson also claims the trial court erred in denying her motion for a mistrial. She argues the trial judge unfairly prejudiced her case by stating to the jury that he would exclude the questioning of Detective Harris regarding the arrest warrant because it "tend[ed] to confuse the issue." A trial court's denial of a motion for a mistrial will only be disturbed on appeal upon a showing of abuse of discretion. *State v. Craig and State v. Anthony*, 308 N.C. 446, 454, 302 S.E.2d 740, 745, *cert. denied*, 464 U.S. 908, 78 L.Ed.2d 247 (1983). "A mistrial should be granted only when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict." *State v. Laws*, 325 N.C. 81, 105, 381 S.E.2d 609, 623 (1989), *vacated on other grounds*, 494 U.S. 1022, 108 L.Ed.2d 603 (1990). Wilson has failed to show the remark irreparably prejudiced her and prevented her from receiving a fair and impartial verdict. We find no abuse of discretion in the denial of her motion for a mistrial.

## IV.

[3] Finally, Wilson argues the trial court erred by failing to find her cocaine addiction to be a mitigating factor during sentencing. She claims her addiction constituted a mental or physical condition which was insufficient to constitute a defense, but significantly reduced her culpability for the offense under N.C. Gen. Stat. § 15A-1340.4(2)(d). To be entitled to this mitigating factor, a defendant must prove by a preponderance of the evidence that there was "an essential link between the drug addiction and the culpability for the offense, and prove that his condition did in fact reduce his culpability." *State v. Arnette*, 85 N.C. App. 492, 494, 355 S.E.2d 498, 500 (1987). Wilson failed to show such a link.

In her testimony, Wilson stated she had been sniffing cocaine and was "kind of high," but that she "wasn't that high to the point where I didn't know what was going on." Although Wilson told the court at sentencing that she would not have been involved in this crime if not for drugs, this unsworn statement and other evidence of addiction presented at trial would only justify a finding that the crime was committed to support her habit. Wilson presented no evidence compelling

a conclusion that her culpability was significantly reduced by her cocaine addiction, and the trial court properly refused to find the addiction as a mitigating factor. *See Arnette*, 85 N.C. App. at 494, 355 S.E.2d at 500.

We find no merit to Wilson's remaining arguments. For the reasons stated, we find no error.

No Error.

Judges JOHNSON and COZORT concur.