STATE OF NORTH CAROLINA v. CHAUNCEY LEE MARSHALL

No. COA07-838

(Filed 19 February 2008)

**1. Robbery— dangerous weapon—sufficiency of indictment—
common law robbery—keeping hand in coat while demand-
ing money**

An indictment alleging the use of "an implement, to wit, keeping his hand in his coat demanding money" was insufficient to charge the offense of robbery with a dangerous weapon, and the case is remanded for entry of judgment and resentencing on common law robbery, because: (1) although the indictment named the weapon, the keeping of his hand in his coat demanding money as the implement, the indictment failed either to state expressly that the weapon was dangerous or to allege facts that necessarily demonstrated the dangerous nature of the weapon; (2) case law revealed that a defendant's hands cannot constitute dangerous weapons for purposes of robbery with a dangerous weapon under N.C.G.S. § 14-87; (3) although pretending to possess a dangerous weapon may create a presumption that defendant in fact possessed a dangerous weapon, it is not a dangerous weapon in and

of itself; and (4) the indictment sufficiently alleged the lesser-included offense of common law robbery since the use or threatened use of a dangerous weapon is not an essential element of this crime.

## 2. Robbery— dangerous weapon—motion to dismiss—sufficiency of evidence—arm in coat to simulate weapon

The trial court did not err by failing to dismiss the charge of robbery with a dangerous weapon involving Circle K even though defendant contends the State failed to prove that he used or threatened use of a dangerous weapon and obtained property by endangering or threatening the victim's life, because: (1) the evidence demonstrated that defendant kept his arm in his coat to simulate a weapon, video surveillance depicted a bulge in defendant's jacket, the victim observed defendant keep his hand on an object with a black texture or grip inside his coat, and the victim expressly stated she was afraid of defendant and though he would hurt her based on the way he was acting; (2) the State was entitled to a presumption that the instrument was what defendant's conduct represented it to be, an implement endangering or threatening the life of the person being robbed; and (3) defendant did not present evidence that unequivocally rebutted the presumption.

Appeal by defendant from judgments entered 13 December 2006 by Judge Charles H. Henry in Onslow County Superior Court. Heard in the Court of Appeals 16 January 2008.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Lars F. Nance, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III, and Charles K. McCotter, Jr., for defendant.*

JACKSON, Judge.

Chauncey Lee Marshall ("defendant") appeals from judgments entered upon guilty verdicts for two charges of robbery with a dangerous weapon. For the following reasons, we hold no error in part, arrest judgment in part, and remand for resentencing.

At approximately 7:30 a.m. on 11 March 2006, Nancy Henneke ("Henneke"), assistant manager of the Kangaroo Express ("the Kangaroo Express") on Piney Green Road in Onslow County, ob-

served defendant enter the store. Defendant did not respond to Henneke's greeting and instead proceeded behind the clerk's counter. Defendant came within three or four inches of Henneke and demanded, "I want the money out of the register." Video surveillance showed that "defendant's right arm was located inside of his coat, held at approximately [a] 90[-]degree angle to his body and his hand was pointed forward in the coat." Henneke testified that she believed defendant had a weapon by the way he carried himself and by the way his hand and arm were jammed in his coat. Henneke testified that she was scared and gave him the money from the register, totaling approximately $63.00. She explained that defendant's keeping his hand inside his coat caused her to give the money away. Defendant also demanded money from the safe, but Henneke was unable to access the safe. Defendant left the store, and Henneke locked the doors and called the police. She subsequently identified defendant in a photographic lineup.

At 8:19 a.m. on 11 March 2006, less than one hour after the robbery at the Kangaroo Express, defendant entered the Circle K ("the Circle K") on Pine Valley Road in Onslow County. Toni Cinotti ("Cinotti"), manager of the Circle K, observed defendant enter the store wearing a black puffy jacket. Defendant came behind the counter, and Cinotti began screaming, "I'm being robbed, I'm being robbed." Cinotti testified that defendant kept his hand in his coat and she "knew there was a gun." Defendant insisted, "[G]ive it up, give it all up. I want all of it." Cinotti was terrified and screaming. Defendant reached for Cinotti's cell phone with his left hand, and she jerked it back and threw it. Cinotti testified that defendant never took his right hand out of his coat and that she saw in his jacket what she believed was a handgun:

> I saw what was like a grip, I guess [that is] the best way to call it. It was like a black handled—I haven't seen many guns, but I've seen them with like a texture. . . .

> . . . .

> . . . When he was grabbing for the cell phone, it was a glimpse and it looks like a texture, I guess a handle. It was black. It all happened so quickly, . . . but I was convinced it was a gun.

Cinotti did not see a barrel, trigger, or hammer, but she observed defendant keep his hand on an object with a grip, and when asked if she thought defendant had a gun, Cinotti stated, "Yes. There was no

doubt in my mind." Defendant yelled at Cinotti to open the drawer and stated, "I want it all. I even want what's under the drawer." Cinotti said there was nothing under the drawer, and she gave him the money from the register. Defendant stuffed the money in his jacket and left the store. Although no evidence was presented that defendant actually possessed a gun, surveillance footage showed both a bulge in defendant's jacket and defendant's keeping his right hand in his jacket during the entire encounter.

Defendant was arrested at approximately 10:00 p.m. on the evening after the robberies. In his statement to police, defendant admitted committing the robberies but denied possessing a weapon and claimed that he had pretended to be armed during the robberies. Defendant was indicted on 6 June 2006 for, *inter alia*, two counts of robbery with a dangerous weapon, and on 13 December 2006, a jury found defendant guilty of both charges. The trial court consolidated the convictions and sentenced defendant as a prior record level IV offender to 117 to 150 months imprisonment.[1] Thereafter, defendant gave timely notice of appeal.

**[1]** On appeal, defendant first contends that the trial court erred by failing to dismiss the indictment in 06 CRS 52283 for failure to properly charge the offense of robbery with a dangerous weapon because (1) the indictment fails to allege that the "implement" was dangerous; and (2) "keeping his hand in his coat" does not constitute a dangerous weapon endangering or threatening the life of the victim.

Preliminarily, we note that defendant failed to raise this issue before the trial court. Nevertheless, it is well-settled that "the failure of a criminal pleading to charge the essential elements of the stated offense is an error of law which may be corrected upon appellate review even though no corresponding objection, exception or motion was made in the trial division." *State v. Sturdivant*, 304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981); *see also State v. Wallace*, 351 N.C. 481, 503, 528 S.E.2d 326, 341 ("[W]here an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if

---

1. In a related case, 06 CRS 52479, defendant pled no contest to possession of cocaine and was sentenced to eight to ten months imprisonment, with the sentence to run concurrently to his sentence for the two convictions of robbery with a dangerous weapon. Defendant has not assigned error with respect to this conviction, and therefore, any issues related to case number 06-CRS-52479 are not before this Court. *See* N.C. R. App. P. 10(a) (2006) (limiting the scope of appellate review to the assignments of error).

it was not contested in the trial court."), *cert. denied,* 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), *reh'g denied,* 531 U.S. 1120, 148 L. Ed. 2d 784 (2001).

We review the issue of insufficiency of an indictment under a *de novo* standard of review. *See Sturdivant,* 304 N.C. at 309, 283 S.E.2d at 730. "A valid bill of indictment is essential to the jurisdiction of the Superior Court to try an accused for a felony and have the jury determine his guilt or innocence, 'and to give authority to the court to render a valid judgment.' " *State v. Moses,* 154 N.C. App. 332, 334, 572 S.E.2d 223, 226 (2002) (quoting *State v. Ray,* 274 N.C. 556, 562, 164 S.E.2d 457, 461 (1968)). As this Court recently explained,

> "North Carolina law has long provided that '[t]here can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. In the absence of an accusation the court a[c]quires no jurisdiction [whatsoever], and if it assumes jurisdiction a trial and conviction are a nullity.' " In other words, *an indictment must allege every element of an offense in order to confer subject matter jurisdiction on the court.*

*State v. Kelso,* 187 N.C. App. 718, 654 S.E.2d 28, 31 (2007) (emphasis added) (alterations in original) (quoting *State v. Neville,* 108 N.C. App. 330, 332, 423 S.E.2d 496, 497 (1992)).

Pursuant to North Carolina General Statutes, section 14-87(a),

> [a]ny person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

N.C. Gen. Stat. § 14-87(a) (2005). Our Supreme Court has clarified that

> [t]he essential elements of robbery with a dangerous weapon are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened."

*State v. Haselden*, 357 N.C. 1, 17, 577 S.E.2d 594, 605 (quoting *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998)), *cert. denied*, 540 U.S. 988, 157 L. Ed. 2d 382 (2003). "A dangerous or deadly weapon 'is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm.'" *State v. Wiggins*, 78 N.C. App. 405, 406, 337 S.E.2d 198, 199 (1985) (quoting *Sturdivant*, 304 N.C. at 301, 283 S.E.2d at 725). "[W]hether an instrument can be considered a dangerous weapon depends upon the nature of the instrument, the manner in which defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use." *State v. Peacock*, 313 N.C. 554, 563, 330 S.E.2d 190, 196 (1985).

In the case *sub judice*, defendant's indictment provides:

> The jurors for the State upon their oath present that on or about the date of the offense shown and in Onslow County the defendant named above unlawfully, willfully and feloniously did steal, take, and carry away and attempt to steal, take and carry away another's personal property, U.S. money of the value of $78.00[,] from the person and presence of Nancy L. Henneke, said property belonging to The Pantry, Inc. D/B/A The Kangaroo Express # 896 located at 1079 Piney Green Road, Jacksonville, North Carolina. The defendant committed this act by means of an assault consisting of *having in possession and threatening the use of an implement, to wit, keeping his hand in his coat demanding money*, whereby the life of Nancy L. Henneke was endangered and threatened.

(Emphasis added). Defendant contends that, as a matter of law, "keeping his hand in his coat demanding money" is insufficient to constitute a dangerous weapon for purposes of an indictment pursuant to section 14-87.

Our Supreme Court has instructed "that it is sufficient for indictments . . . charg[ing] a crime in which one of the elements is the use of a deadly [or dangerous] weapon (1) to name the weapon and (2) either to state expressly that the weapon used was a "deadly [or dangerous] weapon" or to allege such facts as would *necessarily* demonstrate the deadly [or dangerous] character of the weapon." *State v. Palmer*, 293 N.C. 633, 639-40, 239 S.E.2d 406, 411 (1977) (emphasis in original) (alterations added). The indictment in the instant case names the weapon—*i.e.*, "an implement, to wit, keeping his hand in his coat demanding money." However, the indictment fails either to

state expressly that the weapon was dangerous or to allege facts that necessarily demonstrate the dangerous nature of the weapon.

First, the indictment refers to defendant's keeping his hand in his coat as the "implement," but the statute requires that the implement be dangerous.[2] Here, the indictment contains no such express allegation. Second, it is axiomatic that keeping one's hand in a coat cannot be a dangerous weapon when our case law is settled that a defendant's hands, even when used to inflict serious injury, cannot constitute dangerous weapons for purposes of robbery with a dangerous weapon pursuant to section 14-87. *See State v. Hinton*, 361 N.C. 207, 212, 639 S.E.2d 437, 441 (2007) ("[A] defendant's hands, in and of themselves, cannot be dangerous weapons for purposes of robbery with a dangerous weapon under [section] 14-87.").

We agree with the State that a firearm or other dangerous weapon need not be displayed, and our Courts have upheld convictions for robbery with a dangerous weapon when, as in the case *sub judice*, the evidence showed that the defendant did not possess a firearm or dangerous weapon but merely pretended to possess a firearm or dangerous weapon. *See State v. Jarrett*, 167 N.C. App. 336, 338-39, 607 S.E.2d 661, 662-63 (2004) (citing *State v. Williams*, 335 N.C. 518, 521, 438 S.E.2d 727, 728-29 (1994); *State v. Bartley*, 156 N.C. App. 490, 496, 577 S.E.2d 319, 323 (2003); *State v. Lee*, 128 N.C. App. 506, 510, 495 S.E.2d 373, 376, *appeal dismissed and disc. rev. denied*, 348 N.C. 76, 505 S.E.2d 883 (1998)), *disc. rev. denied*, 359 N.C. 324, 611 S.E.2d 840 (2005). However, "[t]he gravamen of the offense is the endangering or threatening of human life by the use or threatened use of firearms or other dangerous weapons in the perpetration of or even in the attempt to perpetrate the crime of robbery." *State v. Ballard*, 280 N.C. 479, 485, 186 S.E.2d 372, 375 (1972). Therefore, pretending to possess a dangerous weapon is not a dangerous weapon in and of itself; instead, pretending to possess a dangerous weapon creates a presumption that the defendant, in fact, possessed a dangerous

---

2. Because the adjective "dangerous" precedes "weapon, implement or means" in the phrase "other dangerous weapon, implement or means" in section 14-87, it necessarily follows that the weapon, implement, or means must be "dangerous." *See Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 849 (Cal. Ct. App. 2003) ("Most readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears."), *disc. rev. denied*, No. S122187, 2004 Cal. LEXIS 2859 (Cal. Mar. 30, 2004); *accord Golf Course Superintendents Ass'n v. Underwriter's at Lloyd's*, 761 F. Supp. 1485, 1490 (D. Kan. 1991); *Lewis v. Jackson Energy Coop. Corp.*, 189 S.W.3d 87, 92 (Ky. 2005); *Ryder v. USAA Gen. Indem. Co.*, 2007 Me. 146, ¶ 15, —— A.2d ——, ——. (Me. 2007).

weapon. *See State v. Joyner*, 312 N.C. 779, 782-83, 324 S.E.2d 841, 844 (1985). Specifically,

> [w]hen a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, *the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be—an implement endangering or threatening the life of the person being robbed. Thus, where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon *and nothing to the contrary appears in evidence*, the presumption that the victim's life was endangered or threatened is mandatory. If the jury in such cases finds the basic fact (that the robbery was accomplished with what appeared to the victim to be a firearm or other dangerous weapon), the jury must find the elemental fact (that a life was endangered or threatened). This is so because, when *no evidence is introduced* tending to show that a life was not endangered or threatened, no issue is raised as to the non-existence of the elemental facts and the jury may be directed to find the elemental facts if it finds the basic facts to exist beyond a reasonable doubt.
>
> . . . .
>
> The mandatory presumption under consideration here, however, is of the type which merely requires the defendant to come forward with *some evidence* (or take advantage of evidence already offered by the prosecution) to rebut the connection between the basic and elemental facts. Therefore, when *any evidence* is introduced tending to show that the life of the victim was not endangered or threatened, the mandatory presumption disappears leaving only a mere permissive inference. The permissive inference which survives permits but does not require the jury to infer the elemental fact (danger or threat to life) from the basic fact proven (robbery with what appeared to the victim to be a firearm or other dangerous weapon).

*Id.* (emphases in original) (internal quotation marks, alterations, and citations omitted). Pursuant to *Joyner* and its progeny, a defendant's keeping his hand in his coat may create a presumption that he possessed a firearm or other dangerous weapon, but his keeping his hand in his coat cannot constitute, in and of itself, a dangerous weapon.

In the instant case, the allegation in the indictment that defendant "ha[d] in possession and threaten[ed] the use of an implement, to wit, keeping his hand in his coat demanding money," was insufficient to satisfy the jurisdictional requirement that an indictment for robbery with a dangerous weapon allege that the defendant "use[d] or threatened use of a firearm or other dangerous weapon." *Call*, 349 N.C. at 417, 508 S.E.2d at 518. Because the indictment for the robbery with a dangerous weapon at the Kangaroo Express failed to allege all of the essential elements, the indictment failed to provide the trial court with subject matter jurisdiction to convict defendant of robbery with a dangerous weapon.

As this Court recently explained,

> [a]n arrest of judgment is proper when the indictment . . . fails to state some essential and necessary element of the offense of which the defendant is found guilty. Further, [w]hen an indictment has failed to allege the essential elements of the crime charged, it has failed to give the trial court subject matter jurisdiction over the matter, and the reviewing court must arrest judgment.

*Kelso*, 187 N.C. App. at 722, 654 S.E.2d at 31-32 (second alteration in original) (internal quotation marks and citation omitted). "The legal effect of arresting the judgment is to vacate the verdict and sentence of imprisonment below, and the State, if it is so advised, may proceed against the defendant upon a sufficient bill of indictment." *State v. Fowler*, 266 N.C. 528, 531, 146 S.E.2d 418, 420 (1966). "However, where the indictment does sufficiently allege a lesser-included offense, we may remand for sentencing and entry of judgment thereupon." *State v. Bullock*, 154 N.C. App. 234, 245, 574 S.E.2d 17, 24 (2002), *appeal dismissed and disc. rev. denied*, 357 N.C. 64, 579 S.E.2d 396, *cert. denied*, 540 U.S. 928, 157 L. Ed. 2d 231 (2003).

"The critical difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened." *Peacock*, 313 N.C. at 562, 330 S.E.2d at 195. In contrast, the use or threatened use of a dangerous weapon is not an essential element of common law robbery. *See State v. Moore*, 279 N.C. 455, 457-58, 183 S.E.2d 546, 547-48 (1971). Therefore, we arrest judgment on robbery with a dangerous weapon of the Kangaroo Express, and we remand for entry of judgment and resentencing on common law robbery.

**[2]** Defendant next contends that the trial court erred in denying his motions to dismiss each of the charges. Specifically, defendant contends that the State failed to prove that (1) he used or threatened use of a dangerous weapon in either of the robberies and (2) obtained property by endangering or threatening Henneke's life in the robbery of the Kangaroo Express or Cinotti's life in the robbery of the Circle K. Because we have arrested judgment on robbery with a dangerous weapon of the Kangaroo Express and because neither of defendant's arguments are material with respect to common law robbery, we confine our analysis to the robbery with a dangerous weapon of the Circle K.

As our Supreme Court has explained,

[w]hen a defendant moves to dismiss a charge against him on the ground of insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable person might accept as adequate or would consider necessary to support a particular conclusion. A substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight. The reviewing court considers all evidence in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence. Evidentiary contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. Finally, sufficiency review is the same whether the evidence is circumstantial or direct, or both.

*State v. Garcia,* 358 N.C. 382, 412-13, 597 S.E.2d 724, 746 (2004) (internal quotation marks, citations, and alteration omitted), *cert. denied,* 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). "In considering a motion to dismiss, the trial court is concerned only with sufficiency of the evidence to carry the case to the jury and not its weight." *State v. Crawford,* 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996).

In the instant case, defendant correctly argues that (1) no gun was found on defendant; (2) no gun was introduced into evidence at trial; and (3) defendant's hands cannot be dangerous weapons pursuant to section 14-87. However, as stated *supra,*

[w]hen a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other danger-

ous weapon, *the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be—an implement endangering or threatening the life of the person being robbed.

*Joyner*, 312 N.C. at 782, 324 S.E.2d at 844 (emphasis in original).

Here, the evidence demonstrated that defendant kept his arm in his coat to simulate a weapon, and video surveillance depicted a bulge in defendant's jacket. Additionally, Cinotti observed defendant keep his hand on an object with a black texture or grip inside his coat, and she testified that "[t]here was no doubt in [her] mind" that defendant possessed a gun. Cinotti also expressly testified that she was afraid of defendant and thought he would hurt her because of "[t]he way he was acting. The way he was carrying himself. The fact that he had a gun." The State, therefore, was entitled to a presumption that "the instrument [wa]s what [defendant's] conduct represent[ed] it to be—an implement endangering or threatening the life of the person being robbed." *Id.*

Defendant, on the other hand, presented evidence in the form of his testimony and his statement to police that he was not armed during the robberies and only pretended to be armed. Defendant, therefore, presented some evidence showing that Cinotti's life was not endangered or threatened, and consequently, " 'the mandatory presumption disappear[ed] leaving only a mere permissive inference.' " *Id.* at 783, 324 S.E.2d at 844 (quoting *State v. White*, 300 N.C. 494, 507, 268 S.E.2d 481, 489, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 443 (1980)). Nevertheless, because defendant did not present evidence that unequivocally rebutted the presumption, the permissive presumption was sufficient to overcome defendant's motion to dismiss. *See, e.g., State v. Barrett*, 20 N.C. App. 419, 422-23, 201 S.E.2d 553, 555, *cert. denied*, 285 N.C. 86, 203 S.E.2d 58 (1974). The trial court, therefore, correctly denied defendant's motion to dismiss, and accordingly, defendant's assignment of error is overruled.

No Error in part, Judgment Arrested in part, and Remanded for resentencing.

Judges HUNTER and BRYANT concur.