BRYANT, Judge.
Where, on the charge of robbery with a dangerous weapon, the evidence was sufficient to establish that a dangerous weapon was used and no evidence to the contrary was presented, the trial court properly denied defendant's request for an instruction on the lesser included offense of common law robbery. Accordingly, we hold no error.
The State's evidence at trial tended to show the following: On 5 April 2015, defendant Giovani Lopes, who was then sixteen years old, responded to an online advertisement for collectible basketball sneakers posted by fifteen-year-old T.B. ("Tim").[1] After defendant and Tim reached an agreement on the sales price, they arranged to meet in the parking lot of a McDonald's restaurant to conduct the transaction. At approximately 8:30 p.m., on 6 April 2015, Tim and his friend T.P. ("Tony"), rode their skateboards to the McDonald's and waited for defendant in the parking lot. Defendant arrived shortly after 9:00 p.m. in a blue Ford sedan with three other teenagers, C.A. ("Carl"), S.M. ("Stuart"), and K.T. ("Kevin"). Carl was driving, Stuart was sitting in the front passenger seat, Kevin was seated in the back on the driver's side, and defendant was sitting in the back passenger seat. Tim approached the rear passenger side of the vehicle and asked defendant to exit the car. After defendant stepped out of the car, Tim handed him the shoe box, and defendant began to inspect the sneakers. Tony stood a few feet behind Tim while Tim interacted with defendant.
As defendant continued to examine the shoes, Stuart opened the front passenger door and placed his feet on the ground. While remaining seated, Stuart then pointed a gun at Tim and said, "Get the f*** away from the car." At trial, Tim testified that he was afraid and backed away from the vehicle. He described the gun as black and silver with a square nose, and stated that while it looked similar to guns from video games and "could have been" a gun from a video game, he believed it was a real weapon. Tony testified that the gun looked like a black Glock pistol with a barrel shaped "like the chamber of a bullet." He stated that he heard the gun "cock" and saw Tim's "eyes light up when he heard it."
Within a few seconds of Stuart pointing the gun at Tim, defendant got back into the car with the sneakers, and the group drove out of the parking lot without paying for the shoes. According to Tony, as the car drove away, Stuart waved the gun through the window and screamed. Tim immediately called the police and reported the robbery. He provided a written statement to the responding officer in which he stated that the front passenger of the vehicle possessed a hand gun. Neither the shoes nor the gun were recovered during the course of the subsequent police investigation.
Carl, the driver of the vehicle, testified for the State. He stated that on the night of 6 April 2015, he, Stuart, and Kevin were playing basketball when Stuart told him they needed to pick up someone and drive that person to buy shoes. He then drove Stuart and Kevin to a grocery store where defendant got into the car, and the group proceeded to the McDonald's where Tim and Tony were waiting. At the McDonald's, he stayed in the car as defendant got out to look at the sneakers. Carl initially saw what he thought was a black gun in Stuart's hand as Stuart exited the vehicle, but he could not describe the gun because he "just seen [sic] black really." He thought the object was a gun based on the way it was shaped and the fact that he heard someone say "it's a gun." After Stuart and defendant got back into the car with the sneakers, Carl drove away and dropped off Kevin, Stuart, and defendant at their respective houses before going home.
Kevin, who was sitting in the back seat of the vehicle on the driver's side, also testified for the State. He stated that after Tim and Tony approached the car at the McDonald's, defendant got out of the car, "grabbed the shoes," and re-entered the vehicle. Kevin testified that he did not see or hear Stuart do anything, and he did not see a gun.
Defendant testified on his own behalf at trial. He stated that he agreed to meet Tim at the McDonald's to purchase the sneakers and that he arranged for transportation through Stuart because he did not own a car. Defendant asserted that he did not plan the robbery with the other occupants of the car, that he did not see anyone in the car with a gun on the way to the McDonald's, and that he did not know the robbery was going to occur. He explained that he withdrew money from a bank on the way to the McDonald's in order to pay for the shoes. According to defendant when Stuart pointed the gun at Tim, he panicked and on instinct got back into the car with the sneakers. He explained that he was scared and did not "want to be on the opposite side of a gun." Although defendant was not certain whether the gun was a firearm because he only took a "quick glance" at it before getting back into the car, he testified that he assumed it was a firearm because "[i]t was black and it had no orange tip." Defendant stated that when he asked Stuart why he robbed Tim, Stuart replied, "that's free money[,]" and Kevin laughed "as if it was a joke." He claimed that he left the shoes in the car with Stuart when he was later dropped off at his house.
Defendant was indicted for one count of robbery with a dangerous weapon. Beginning on 18 September 2017, he was tried by a jury in Union County Superior Court. During the charge conference, defendant requested an instruction on the lesser included offense of common law robbery. The trial court denied the request and instructed the jury that it could find defendant guilty of robbery with a dangerous weapon or not guilty. The jury found defendant guilty, and the trial court sentenced him to 51 to 74 months of imprisonment. Defendant appeals.
_________________________
Defendant's sole argument on appeal is that the trial court erred by refusing to instruct the jury on the lesser included offense of common law robbery.
It is well settled that
[a] defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support it. The test in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and whether there is any conflicting evidence relating to any of these elements.
State v. Chaves , 246 N.C. App. 100, 102-03, 782 S.E.2d 540, 542-43 (2016) (alteration in original) (citation omitted). "Where there is positive and unequivocal evidence as to each and every element of armed robbery, and there is no evidence supporting the defendant's guilt of a lesser included offense, the trial court may properly decline to instruct the jury on the lesser included offense of common law robbery." State v. Frazier, 150 N.C. App. 416, 418, 562 S.E.2d 910, 912-13 (2002) (citation omitted).
The offense of robbery with a dangerous weapon is set forth in N.C. Gen. Stat. § 14-87(a), which provides:
Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another ... at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.
N.C. Gen. Stat. § 14-87(a) (2017). "The primary distinction between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened. [This defining factor] is not an essential element of common law robbery." State v.Williams , 201 N.C. App. 103, 111, 685 S.E.2d 534, 539 (2009) (alteration in original) (citation omitted).
Defendant argues that the trial court erred in failing to instruct the jury on common law robbery because the State's evidence "left room for reasonable doubt" as to whether the gun was an operational firearm. Specifically, defendant contends that his own testimony, combined with the testimony of Tim, Carl, and Kevin, created ambiguity as to the gun's authenticity. He also asserts that certain facts, namely Stuart waving the gun out the window and Kevin laughing after the robbery, support the inference that Stuart was "tricking everyone into believing a fake gun was in fact real." Lastly, defendant argues that the State's failure to call Stuart as a witness or introduce the gun into evidence was "enough to make a reasonable juror wonder if the gun was in fact real." Defendant, however, misapprehends the applicable law.
"When a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, the law presumes, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be-an implement endangering or threatening the life of the person being robbed." State v. Joyner, 312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985) (citation omitted). "Thus, where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon and nothing to the contrary appears in evidence, the presumption that the victim's life was endangered or threatened is mandatory." State v. Williams , 335 N.C. 518, 521, 438 S.E.2d 727, 728 (1994) (citations omitted). However, if there is evidence "that the instrument is 'an inoperative firearm incapable of threatening or endangering the life of the victim[,]' it is 'for the jury to determine the nature of the weapon.' " Frazier , 150 N.C. App. at 419, 562 S.E.2d at 913 (alteration in original) (quoting State v. Allen , 317 N.C. 119, 125-26, 343 S.E.2d 893, 897 (1986) ). "In such a case, instruction on the lesser included offense of common law robbery should also be given." State v. Wilson , 121 N.C. App. 720, 725, 468 S.E.2d 475, 479 (1996) (citing Joyner, 312 N.C. at 786, 324 S.E.2d at 846 ). "Therefore, in deciding whether it was proper for the trial court to instruct only on armed robbery, 'the dispositive issue ... is whether any substantial evidence was introduced at trial tending to show affirmatively that the instrument used ... was not a firearm or deadly weapon[.]' " State v. Spellman , 167 N.C. App. 374, 390, 605 S.E.2d 696, 706 (2004) (first and third alterations in original) (quoting Williams, 335 N.C. at 523, 438 S.E.2d at 729 ).
In the present case, Tim testified that he believed the gun was a firearm. On direct examination, he described the gun as black and silver with a square nose, and he explained that he was afraid and backed away from the vehicle. While he stated on cross-examination that the gun appeared similar to those used in video games and "could have been" a gun from a video game, he clarified on re-direct that he believed the gun was an operational firearm:
Q. When you said that [the gun] look[ed] like weapons you've seen in video games, do you mean that it looked like a real weapon?
A. Yes.
Q. And did you believe it to be a real weapon?
A. Yes.
His testimony was corroborated by his written statement to police. In addition, Tony unequivocally testified that a firearm was used.
Although defendant argues that numerous facts gave the jury reason to doubt the authenticity of the gun, there is simply no evidence "contrary" to the State's evidence "tending to show affirmatively that the instrument used by [Stuart] was not a firearm ...." Williams, 335 N.C. at 523, 438 S.E.2d at 729 ; see Spellman , 167 N.C. App. at 391, 605 S.E.2d at 707 (approving use of mandatory presumption where the victim believed the defendant had a firearm in his jacket pocket, despite testimony from the victim and another witness that they "did not actually see or recover a weapon"); Wilson , 121 N.C. App. at 726-27, 468 S.E.2d at 480 (approving use of mandatory presumption where the victim testified that a firearm was used, despite the defendant's testimony that the gun looked and felt similar to a BB gun). Moreover, defendant's own testimony shows that he believed the gun to be an operational firearm. Therefore, we hold that the evidence in the present case was not sufficient to rebut the mandatory presumption arising from the State's evidence that Stuart possessed and used a firearm during the robbery. Accordingly, the trial court did not err in refusing to instruct the jury on common law robbery.
NO ERROR.
Report per Rule 30(e).
Judges DAVIS and INMAN concur.

Pseudonyms are used to protect the identities of individuals who were minors at the time of the incident.