STATE OF NORTH CAROLINA
v.
LAWRENCE WILLARD SKIPPER.
No. COA09-161.
Court of Appeals of North Carolina.
Filed November 3, 2009.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Anne Goco Kirby, for the State.
Kimberly P. Hoppin, for defendant-appellant.
CALABRIA, Judge.
Lawrence Willard Skipper ("defendant") appeals a judgment entered upon a jury verdict finding him guilty of felonious breaking or entering, felonious larceny, felonious possession of stolen goods, and attaining the status of an habitual felon. We find no error in part, vacate in part, and remand for resentencing.

I. BACKGROUND
On 6 October 2004 at 8:30 p.m., Shelby Blanchard ("Mrs. Blanchard") and her husband locked the doors of New Hope Baptist Church ("New Hope") after services. Mrs. Blanchard returned to clean the church the next day, 7 October 2004, between 10:00 and 11:00 a.m. When she entered the church, she noticed the pastor's office door, which was always locked, was open, the whole side of the wall was damaged, and a color television ("TV") and other items were missing. Prior to this incident, there had been another break-in at the church. As a precaution, Mrs. Blanchard and a relative, Lora Ann Blanchard ("Ms. Blanchard"), took an inventory of the church property. As part of this inventory, they photographed the TV and recorded its serial number.
Detective Lawrence Thomas Dixon ("Detective Dixon") in the Criminal Investigations Division of the Sampson County Sheriff's Department ("SCSD") arrived at the church on 7 October 2004, responding to a report of a breaking and entering and larceny. During Detective Dixon's investigation, he found a tire tool on the ground behind the church which matched the marks on a windowsill and "other parts of the church that were pried open." Mrs. Blanchard provided Detective Dixon a list of items that were missing from the church along with the serial numbers for those items. The list included, inter alia, a 27-inch Symphonic color TV. Detective Dixon entered the serial numbers into a statewide database.
The Duplin County Sheriff's Department went through pawn tickets and found one for a TV with a matching serial number at the Pawn USA shop ("Pawn USA") and contacted the SCSD. Detective Dixon of the SCSD then went to Pawn USA and recovered a 27-inch Symphonic TV with a serial number matching the one from the TV missing from the church. Larone Smith ("Smith"), former Assistant Manager for Pawn USA, identified the pawn ticket for the TV as one used by Pawn USA. The pawn ticket showed that someone pawned a color TV at 10:51 a.m. on 7 October 2004. Smith could not specifically recall seeing defendant enter Pawn USA on 7 October 2004. However, Smith obtained the name, address, and driver's license number listed on the pawn ticket from the identification presented by the person who pawned the TV. It was later determined that defendant's information matched the information listed on the pawn ticket.
Defendant was indicted on charges of felonious breaking and entering, felonious larceny, felonious possession of stolen goods and attaining the status of an habitual felon. The State presented evidence at trial in Sampson County Superior Court. At the close of the State's evidence, defendant moved to dismiss the charges and the trial court denied the motion. At the close of all the evidence, defendant again moved to dismiss all charges, and the trial court also denied that motion. The trial court then instructed the jury on all charges, including an instruction on the doctrine of recent possession. On 19 August 2008, the jury returned verdicts of guilty to felonious breaking and entering, felonious larceny, felonious possession of stolen goods, and attaining the status of an habitual felon. Defendant was sentenced to a minimum term of 125 months to a maximum term of 159 months in the custody of the North Carolina Department of Correction. Defendant appeals.

II. DEFECTIVE INDICTMENT
Defendant contends, and the State conceded, that the indictment for felonious larceny was fatally defective because it failed to allege that New Hope was a legal entity capable of owning property. We agree.
The issue of whether an indictment is fatally defective is reviewable de novo. State v. Marshall, 188 N.C. App. 744, 748, 656 S.E.2d 709, 712 (2008). The issue is automatically reversible even though no objection, exception, or motion has been made at the trial level. Id. at 747-48, 656 S.E.2d at 712. "`An indictment for larceny which fails to allege the ownership of the property either in a natural person or a legal entity capable of owning property is fatally defective.'" State v. Cathey, 162 N.C. App. 350, 352-53, 590 S.E.2d 408, 410 (2004) (quoting State v. Roberts, 14 N.C. App. 648, 649, 188 S.E.2d 610, 611-12 (1972)). In Cathey, this Court found that a larceny indictment against the defendant for taking personal property from the "Faith Temple Church of God" was fatally defective because the indictment did not allege the church was a legal entity capable of owning property. Id. In State v. Patterson, this Court found an indictment which alleged the defendant committed a larceny against the "First Baptist Church of Robbinsville" was fatally defective because the indictment failed to allege the church was a legal entity capable of owning property. ___ N.C. App. ___, ___, 671 S.E.2d 357, 359-61 (2009). "[T]he indictment must show on its face that the church is a legal entity capable of owning property...." Id. at ___, 671 S.E.2d at 361.
In the instant case, the indictment for felonious larceny alleged that the defendant "unlawfully, willfully and feloniously did steal, take and carry away a...27" Symphonic color television...being the personal property of New Hope Baptist Church...." Since the indictment failed to state New Hope was a legal entity capable of owning property, the indictment was fatally defective. Therefore, the judgment for felonious larceny must be vacated and this case must be remanded for resentencing.

III. ERROR IN SENTENCING
Defendant argues the trial court erred in entering judgment against the defendant for both felonious larceny of and felonious possession of the same goods. Since the defendant's conviction for felonious larceny has been vacated, this issue is moot.

IV. MOTION TO DISMISS
Defendant next contends the trial court erred in denying his motion to dismiss the charges of felonious breaking and entering, felonious larceny, and felonious possession of stolen goods because there was insufficient evidence to support a conviction. We disagree. As an initial matter, since we have vacated defendant's conviction for felonious larceny, we need not address defendant's argument as to whether there was insufficient evidence to support a conviction for that charge.
When considering a defendant's motion to dismiss, the State must present substantial evidence of every element of the offense charged and substantial evidence the defendant is the perpetrator. State v. Earnhardt, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "[T]he trial court must consider all evidence...in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "[I]f a reasonable juror could draw an inference of defendant's guilt from the evidence before him, the evidence is sufficient to allow the jury to consider the issue even if the same evidence may also support an equally reasonable inference of the defendant's innocence." State v. Turner, 168 N.C. App. 152, 155, 607 S.E.2d 19, 22 (2005). "This Court reviews the trial court's denial of a motion to dismiss de novo." State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).
To prove felonious possession of stolen goods, the State must present substantial evidence that defendant: (1) had possession of personal property, (2) which was stolen pursuant to a breaking or entering, (3) the possessor knowing or having reasonable grounds to believe the property was stolen pursuant to a breaking or entering, and (4) the possessor acting with a dishonest purpose. State v. Southards, 189 N.C. App. 152, 156, 657 S.E.2d 419, 421 (2008); N.C. Gen. Stat. § 14-71.1 (2007).
To prove felonious breaking or entering, the State must present substantial evidence of: (1) the breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein. N.C. Gen. Stat. § 14-54(a) (2007); State v. Jones, 188 N.C. App. 562, 564-65, 655 S.E.2d 915, 917 (2008).
In the instant case, the State presented no direct evidence that defendant broke into New Hope or that defendant was ever in actual possession of the stolen TV. However, the State presented substantial circumstantial evidence to support defendant's convictions under the doctrine of recent possession.
"[W]hen there is sufficient evidence that a building has been broken into and goods taken therefrom, the doctrine [of recent possession] raises a presumption from one's possession of such goods recently after the breaking and entering that such person broke and entered the building." State v. Williamson, 74 N.C. App. 114, 116, 327 S.E.2d 319, 320 (1985). The doctrine of recent possession also applies to a charge of felonious possession of stolen property. State v. McQueen, 165 N.C. App. 454, 461-62, 598 S.E.2d 672, 677-78 (2004); State v. Friend, 164 N.C. App. 430, 4383-9, 596 S.E.2d 275, 282 (2004). The presumption raised by the doctrine of recent possession "`is a factual presumption and is strong or weak depending on circumstances  the time between the theft and the possession, the type of property involved, and its legitimate availability in the community.'" State v. Hagler, 32 N.C. App. 444, 445, 232 S.E.2d 712, 713 (1977) (quoting State v. Raynes, 272 N.C. 488, 491, 158 S.E.2d 351, 354 (1968)).
In order to prove possession, the State may show either actual or constructive possession. State v. Perry, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986). Constructive possession exists when the defendant has the intent and capability to maintain control and dominion over the property. State v. Fuller, ___ N.C. App. ___, ___, 674 S.E.2d 824, 830 (2009). "`[C]onstructive possession depends on the totality of circumstances in each case.'" Id. at ___, 674 S.E.2d at 831 (quoting State v. James, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986)).
In the instant case, there is substantial evidence that defendant constructively possessed the TV. James Holder ("Holder"), manager at Pawn USA, testified that Pawn USA created and maintained pawn tickets in the regular course of business. Holder further stated that when a customer brings in an item to pawn, an employee takes the customer's identification and all of that information is recorded in the store's computer along with the model number and serial number of the item being pawned. Additionally, all of this information is recorded on a pawn ticket. Smith testified that he obtained the name, address, and driver's license number listed on the pawn ticket from the identification presented by the person pawning the TV.
The pawn ticket for the TV included defendant's name, address, driver's license number, and a signature. In order to prove that it was defendant's signature on the pawn ticket, the State introduced into evidence an original Adult Rights form signed by defendant. Detective Dixon testified without objection that he saw defendant sign the form.
"[I]t is a well-settled evidentiary principle that a jury may compare a known sample of a person's handwriting with the handwriting on a contested document without the aid of either expert or lay testimony." State v. Owen, 130 N.C. App. 505, 509, 503 S.E.2d 426, 429 (1998) (citing N.C. Gen. Stat. § 8C-1, Rule 901(b)(3)). Therefore, the jury could properly compare the signatures on the pawn ticket and the Adult Rights form and conclude that both belonged to the defendant, allowing an inference that defendant constructively possessed the TV when it was pawned at Pawn USA on 7 October 2004.

A. Recent Possession
A motion to dismiss for insufficient evidence is properly denied where the doctrine of recent possession applies. State v. Washington, 86 N.C. App. 235, 250, 357 S.E.2d 419, 429 (1987). In order for the doctrine of recent possession to apply, the State must show the defendant's possession of stolen property "is sufficiently short under the circumstances of the case to rule out the possibility of a transfer of the stolen property from the thief to an innocent party." State v. Hamlet, 316 N.C. 41, 43, 340 S.E.2d 418, 420 (1986). "The possession, in point of time, should be so close to the theft as to render it unlikely that the possessor could have acquired the property honestly." State v. Jackson, 274 N.C. 594, 597, 164 S.E.2d 369, 370 (1968). In State v. Raynes, our Supreme Court applied the doctrine of recent possession to a time lapse from a Saturday afternoon to a Sunday morning. 272 N.C. 488, 158 S.E.2d 351 (1968). In State v. Cotten, this Court applied the doctrine to a time lapse of a Sunday evening to a Monday morning. 2 N.C. App. 305, 163 S.E.2d 100 (1968).
In the instant case, Mrs. Blanchard arrived at church between 10:00 and 11:00 a.m. on 7 October 2004 and discovered the TV was missing. The time on the pawn ticket indicated the TV had been pawned at 10:51 a.m. on 7 October 2004. Because the times between the discovery of the missing TV and the pawn ticket for the TV are close to the theft, it appears unlikely that defendant could have acquired the property honestly. Furthermore, Mrs. Blanchard and Ms. Blanchard took photographs and recorded the serial numbers on the TV prior to the night of the break-in, Wednesday, 6 October 2004. Mrs. Blanchard locked the doors of the church at approximately 8:30 p.m. on 6 October 2004. The time lapse of less than 15 hours fits squarely under this Court's jurisprudence in Raynes and Cotten.
The evidence in this case, viewed in the light most favorable to the State, was sufficient to present the case to the jury and the trial court did not err in denying defendant's motion to dismiss under the doctrine of recent possession. Defendant's assignments of error are overruled.

V. JURY INSTRUCTIONS
Defendant argues that the trial court's failure to instruct the jury on the necessary elements of attaining the status of an habitual felon is reversible error and effectively dismisses the indictment. Specifically, defendant contends the instruction failed to include the dates of the offenses and the State's burden to prove beyond a reasonable doubt that defendant had been convicted of three non-overlapping felonies in order to find him guilty of attaining the status of an habitual felon.
Since defendant did not object at trial to the jury instructions, we review for plain error. State v. Oakman, ___ N.C. App. ___, ___, 663 S.E.2d 453, 456 (2008). Under the plain error standard of review, defendant has the burden of showing: "`(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.'" State v. McNeil, 165 N.C. App. 777, 784, 600 S.E.2d 31, 36 (2004) (quoting State v. Bishop, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)). "`In deciding whether a defect in the jury instruction constitutes `plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt.'" Oakman, ___ N.C. App. at ___, 663 S.E.2d at 456 (quoting State v. Smith, 162 N.C. App. 46, 51, 589 S.E.2d 739, 743 (2004)). "Indeed, even when the `plain error' rule is applied, `[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.'" State v. Odom, 307 N.C. 655, 660-61, 300 S.E.2d 375, 378 (1983) (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203, 212 (1977)).
A trial judge is not required to follow any particular form in giving instructions and has wide discretion in presenting the issues to the jury. State v. Harris, 306 N.C. 724, 728, 295 S.E.2d 391, 393 (1982). However, the trial court must charge and explain every essential element of the offense charged. State v. Young, 16 N.C. App. 101, 106, 191 S.E.2d 369, 373 (1972). N.C. Gen. Stat. § 14-7.1 defines an habitual felon as "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal or state court in the United States or combination thereof...." N.C. Gen. Stat. § 14-7.1 (2007). The statute further states:
The commission of a second felony shall not fall within the purview of this Article unless it is committed after the conviction of or plea of guilty to the first felony. The commission of a third felony shall not fall within the purview of this Article unless it is committed after the conviction of or plea of guilty to the second felony.
Id.
In the instant case, the trial court stated in its instructions to the jury:
Now, members of the jury, the defendant has been charged with being an habitual felon. An habitual felon is an individual who has been convicted of or pled guilty to felony offenses on at least three separate occasions since July 6 of 1967. Each of these crimes must have been committed after the plea of guilty to or conviction of the one before it.
The trial court also instructed on the State's burden of proof:
Now if you find from the evidence beyond a reasonable doubt that on these dates the defendant was convicted of or pled guilty to those offenses, that they were committed in violation of the laws of the State of North Carolina, then it would be your duty to return a verdict of guilty. If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
In its initial instructions, the trial court included the burden of proof instruction regarding the conviction dates but failed to also include the offense dates for each felony. After the State alerted the trial court, the jury returned and the trial court instructed the jury on both the dates of the offenses and the dates of the convictions for defendant's three previous felonies. However, the trial court's subsequent instructions to the jury failed to include the additional statement that the State also had to prove beyond a reasonable doubt the offense dates of the previous felony offenses. Since this was error, we must examine the entire record to determine whether the failure of the trial court to properly instruct the jury on a separate statement regarding the burden of proof for the offense dates was plain error.
Defendant cites State v. Bowen, 139 N.C. App. 18, 533 S.E.2d 248 (2000) as support for his argument. In Bowen, the trial court erroneously instructed the jury on the charge of statutory sex offense instead of the offense for which the defendant was charged, first degree (forcible) sexual offense. Id. at 23, 533 S.E.2d at 252-53. This Court held that the trial court's failure to instruct the jury on the correct offense effectively dismissed the indictment and the judgment for first degree sexual offense was vacated. Id. at 26, 533 S.E.2d at 253-54.
Bowen is distinguishable from the instant case. In the instant case, defendant was indicted on a charge of attaining the status of an habitual felon. The State introduced into evidence certified true copies of defendant's prior judgments and convictions for felony offenses. These certified true copies included the dates of both the offenses and the convictions. The State also presented witnesses who testified that the certified true copies were authentic, and the copies were published to the jury. Pursuant to N.C. Gen. Stat. § 14-7.4 (2007), a "certified copy of the court record, bearing the same name as that by which the defendant is charged, shall be prima facie evidence that the defendant named therein is the same as the defendant before the court, and shall be prima facie evidence of the facts set out therein." N.C. Gen. Stat. § 14-7.4 (2007).
Since we are reviewing for plain error, defendant had the burden of showing that a different result would have been reached but for the error or that the error resulted in a miscarriage of justice or denied him a fair trial. McNeil, 165 N.C. App. at 784, 600 S.E.2d at 36. The jury heard evidence and instructions on the correct dates for both the offenses and convictions for defendant's three previous felonies. The jury was also instructed that if the State proved beyond a reasonable doubt that defendant was convicted of or pled guilty to three previous separate felonies since 6 July 1967, then it was to find defendant guilty of attaining the status of an habitual felon. Therefore, although the trial court erred by failing to include in the instruction to the jury that both the dates of the offenses and the dates of the convictions had to be proven beyond a reasonable doubt, the defendant has failed to show that a different result would have been reached and this error did not result in a miscarriage of justice or otherwise deny defendant a fair trial. Therefore, unlike Bowen, neither dismissal of the indictment nor vacating the judgment for attaining the status of an habitual felon are required. Defendant's assignment of error is overruled.

VI. CONCLUSION
Defendant has failed to bring forth any arguments regarding his remaining assignments of error. As such, these assignments of error are abandoned pursuant to N.C. R. App. P. 28(b)(6) (2009). Defendant's conviction for felony larceny is vacated. On the remaining charges, defendant received a fair trial, free from error. This case is remanded for resentencing on defendant's remaining convictions.
Vacated in part, no error in part, and remanded.
Judges Bryant and Elmore concur.
Report per Rule 30(e).